THE PLANTERS' BANK OF PRINCE GEORGE'S COUNTY *vs.* THE FARMERS AND MECHANICS' BANK OF GEORGETOWN.—*June,* 1837.

The usage of banks in regard to the manner in which current deposites, and the proceeds of notes and drafts placed with them for collection are paid, not being in proof, nor heretofore proved and established in courts of justice, cannot be judicially known, or sanctioned as general mercantile usages, which are a part of the law of the land.

A usage established by proof, that current deposites made in a bank, and the proceeds of notes and drafts placed for collection, are to be paid to the depositor, upon demand, at the counter of the bank, would prevent the running of the act of limitations against such depositor, until payment of his claim had been refused, or some act done, with his knowledge, dispensing with the necessity of a demand.

Such dispensation would be furnished by the suspension of specie payments, and discontinuance of banking operations, by the bank, provided, those acts were known to the plaintiff, and from the time of such knowledge, the statute of limitations would begin to run.

Mere fiduciary relations between the parties to a suit, in respect to the matters in controversy, will not *per se,* prevent the running of the act of limitations. In a court of law there is no such bar to the operation of the act as *trusts,* otherwise than as shewing when the right of action accrued.

Though the indebtedness of the defendant, may be the result of a running account between the plaintiff and defendant, it is not necessary in an action for money had and received, that the plaintiff should produce the running account, and prove all the items thereof, but he may prove any isolated receipt of money by the defendant, and claim a verdict for the amount, unless satisfaction in some way of such receipt can be shewn.

APPEAL from *Prince George's* county court.

This was an action *assumpsit,* instituted on the 15th November, 1834, by the appellee against the appellant. The declaration, was for sundry matters and articles properly

57        v.8

chargeable in account, &c. for money paid, laid out and expended, lent and advanced, had and received for the use of the plaintiff, and also for an account stated. Issues were joined on the pleas of *non assumpsit* and limitations.

1. At the trial of the cause, the plaintiffs, an incorporated banking institution in the *District of Columbia,* offered evidence of a balance due them in 1829, resulting from dealings between the plaintiffs and defendants, from January, 1828, to 1829, and then terminating; consisting of notes, checks and drafts, sent to each other reciprocally for collection, the proceeds of which when collected and paid, were placed by each, to the credit of the other, according to the course of dealing between them. The defendants then read to the jury the following letters, which it was admitted were written by the cashiers of the two banks :

FARMERS AND MECHANICS' BANK,

*Georgetown, February* 11, 1828.

DEAR SIR :—I have your favours of 7th and 8th inst. with enclosures. Our book-keeper is just at this time much engaged in the examination of accounts, but will take the first leisure moment to attend to yours,

J. J. STULL, *Cash'r.*

T. TYLER, *Esq.*

FARMERS AND MECHANICS' BANK,

*Georgetown, February* 16, 1828.

DEAR SIR :—I enclose you a statement of differences in our accounts, as they appear on our books, and the statements furnished by you from the time of the last settlement, in 1821, showing the different sums charged by us, and not credited by you, as also several items credited by you, and not charged by us, which you will please examine and report on them. In August, 1827, I find I have charged you with *Truman Tyler's* check, for $50 drawn on *Planters' Bank,* but charged here, which I now enclose for our credit, your early attention to the subject will oblige,

J. J. STULL, *Cash'r.*

T. TYLER, *Esq.*

FARMERS AND MECHANICS' BANK,
*Georgetown, February* 26, 1828.

DEAR SIR :—The enclosure in your favour of the 23d inst. is received. On the 16th inst. I enclosed you a statement of differences in our account, and also *T. Tyler's* check for $50, the receipt of which you do not acknowledge,

Yours, J. J. STULL, *Cash'r.*

T. TYLER, *Esq.*

PLANTERS' BANK,
*Prince George's county, March* 3, 1828.

DEAR SIR :—I have received your two favours of the 16th and 26th ult. with their respective enclosures. I have been utterly at a loss to account for the non-appearance of my check on this bank received in the latter, and for which you have a credit. Your statement received in the former, shall be attended to as early as possible, but inasmuch as it includes the transactions of our banks for more than seven years, and is involved in great obscurity, it will be a work of great labour to investigate it with accuracy, particularly as the person who acted as our book-keeper during the whole period is now absent from the bank, but is expected shortly to return. Upon first view of your statement of differences, I observed several errors, only one of which I will now state. On the 14th October, 1822, you say—*T. Tyler's* note of $600—paid $400—short $200. Upon a reference to our correspondence at that time, you will find that prior to the note becoming due, I obtained your permission to pay $400 at the maturity of the note, and to renew for the other $200 for thirty days, and upon reference to the copy of our accounts furnished you, you will find that at the expiration of the thirty days, the balance of $200, with discount thereon was paid, and that you are credited with the same. We have furnished you with copies of our account, from our first settlement to the present time ; and in order to come to a fair and corrected settlement of our accounts, I am persuaded it will be necessary for us to have a full copy of your accounts from the same period. Being the only officer in the bank at this

time, except the president, and having been confined to my bed for the last ten days, has prevented an earlier attention to your letter of the 16th ult.     Yours,

T. TYLER, *Cash'r.*

J. J. STULL, *Esq.*

FARMERS AND MECHANICS' BANK.
*Georgetown, March* 8, 1828.

DEAR SIR:—I have your favour of 3d inst.   I hope you will find less difficulty in adjusting our accounts, than you seem to apprehend.   The discrepancies are numerous, but I hope on reference to your books and letters, you will be enabled without difficulty to trace them.   Our accounts agree as far as we have been able to discover, with the exception of the errors furnished.   It seems that your note was charged up ($600) for the whole amount, when it was renewed for $400, you afterwards credit us $201 13 but we charge you only $1 13 for the discount.   If you cannot account for all the errors as stated by us, you will please report them, and we perhaps will be able to trace them here, and in that way be enabled to adjust the account without making out the whole account from our books.     Yours,

J. J. STULL, *Cash'r.*

T. TYLER, *Esq.*

PLANTERS' BANK,
*Prince George's county, March* 21, 1828.

DEAR SIR:—I send under cover our remarks on your statements of differences in our accounts, as far as we have been able to trace them.   Please to examine them, and give us the information requested.   I enclose you for collection and my credit, *Sam. Sprigg's* bill on *Gen. W. Smith for* $1,200.     Yours,

T. TYLER, *Cash'r.*

J. J. STULL, *Esq.*

And also read the following resolution of the board of directors of the defendants.

*August* 28*th,* 1834.

*Resolved* by the board of directors, that the cashier inform the *Farmers and Mechanics' Bank of Georgetown,* that this

institution always has denied, and still does deny all indebtedness on the part of this institution to the said *Farmers and Mechanics' Bank of Georgetown.*"

The defendants then prayed the court to instruct the jury as follows :

1. That if the jury should be of opinion from the evidence, that the dealings between the plaintiffs and defendants terminated in the year 1829, and that from that time, or from an earlier period to the present, there had been no recognition by the defendants of a debt due the plaintiffs, but that, on the contrary, the defendants have refused to settle, or allow the claim asserted by the plaintiffs, that then the plea of the statute of limitations is a bar to the plaintiffs' action, and the verdict must be for the defendants.

2. That if the jury should be of opinion from the evidence, that the accounts between the plaintiffs and defendants have remained unsettled, and in dispute from the year 1829, when the defendants stopped payment, or from an earlier period, to the present time, and that within three years next preceding the institution of this suit, the defendants have made no acknowledgment of indebtedness to the plaintiffs, that then the plea of the statute of limitations is a bar, and the plaintiffs are not entitled to recover.

3. That if the jury should be of opinion from the evidence, that the defendants since the year 1829 or before, have failed or refused to settle accounts with the plaintiffs, though called upon so to do more than three years next before the institution of the present action, that then the act of limitations is a bar, and the plaintiffs are not entitled to recover.

4. That if the jury should be of opinion from the evidence, that the claim or any part of the claim of the plaintiffs on the defendants, arises from notes and drafts sent by the said plaintiffs to the defendants for collection, and which became due, and were collected more than three years before the commencement of the present action, that then, in relation to such portions of the plaintiffs' claim, the statute of limitations is a bar, and the plaintiffs are not entitled to recover.

5. That if the jury should believe from the evidence, that from the year 1821, when the accounts between the plaintiffs and defendants were settled, to the year 1829, when their dealings ceased, and the defendants stopped payment, and discontinued banking operations, and that from the latter period, or before, or since, there has been no settlement of accounts, or recognitions of a balance due the plaintiffs, but on the contrary, the claim of the plaintiffs has been disputed, and the defendants have failed to settle the account, then the plaintiffs are not entitled to recover, the plea of the statute of limitations being a bar to their action.

All which instructions the county court (*Stephen, Ch. J.,* and *Key* and *C. Dorsey. A. J's,*) refused to grant. The defendants excepted.

2d Exception.—After the evidence which had been offer-ed in the preceding exception, and which is to be taken as a part of this, the defendants proved to the jury by competent witnesses that the defendants stopped payment and refused to pay specie for their notes or claims against them on the 10th August, 1829, and suspended banking operations on that day: and that a copy of the following resolution of the board of directors, announcing that fact to the public, was published in the newspapers in the *District of Columbia, Baltimore,* and *Annapolis,* at that time, viz:

"August 10th, 1829, whereas the very general prevalence of reports injurious to the credit of this institution, have produced such an effect upon its circulation, and such incessant demands for specie, that in the opinion of the board it has become necessary, at least for a period, to suspend the redemption of its paper. In adopting this course the board of directors consider it their duty to assure the creditors of the institution, that the funds of the bank are in their opinion abundantly sufficient to discharge all its obligations, so soon as the same can be made available; and they also are justified in the belief that, the period when this can be effected is not far distant. The board likewise made known to the stockholders that so far as they can at this time determine of

the situation of the bank, they entertain a decided conviction, that there will not be ultimately a considerable loss. Indeed they are persuaded there will be none, because it is not believed that the amount of bad debts will be more than equal to the surplus profits. The board, therefore, whilst they earnestly advise the bill-holders and depositors to submit to no sacrifice, feel themselves perfectly warranted in holding out to the stockholders the prospect of full indemnity. It is in contemplation to appoint a committee to investigate carefully the affairs of the bank, and when the same shall be completed, a full exposition of its affairs will be laid before the public. Therefore, *resolved,* that until further notice, the paper of the *Planters' Bank of Prince George's county* will not be redeemed, and that the president cause this preamble and resolution to be communicated to the public, by inserting a copy in one or more newspapers in the *District of Columbia,* and the cities of *Baltimore* and *Annapolis,* and at the door of the banking house."

And thereupon they prayed the court to instruct the jury, that if the jury believe from the evidence in the cause, that the account between the parties terminated in 1829, and that the defendants in that year stopped payment, and refused to pay specie for their notes, and suspended ordinary banking operations, and that public notice of that fact was given in the manner stated in this exception, that then any balance which may have been due from the defendants to the plaintiffs ceased to be held by the former in a fiduciary character, and became a fit subject for a suit at law, and the act of limitations from that time began to run. The court refused to give the instruction as prayed. The defendants excepted.

3d EXCEPTION.—Upon all the evidence in the preceding bills of exceptions, which it is agreed shall be considered as incorporated in this exception, the defendants further prayed the court to instruct the jury, that if they should find from the evidence, that the last settlement between the plaintiffs and defendants took place in the year 1821, and that no settlement has taken place since, and that there has been no

456    CASES IN THE COURT OF APPEALS

Planters' Bank vs. Farmers and Mechanics' Bank.—1837.

admission of a balance due the plaintiffs at any time, that then the plaintiffs will only be entitled to recover, by shewing a balance in their favour upon the whole account commencing in 1821, when the last settlement was made, if the jury believe that in fact a settlement was then made; which instruction the court refused to give, but were of opinion, and so instructed the jury that, the plaintiffs are entitled to recover in this action, the moneys collected on the notes given in evidence by them, unless the defendants can shew satisfaction thereof, or an indebtedness to them on the part of the plaintiffs, in the course of the dealings which took place subsequent to the year 1821, or before, if the settlement then made was in any respect or particular incorrect. To which refusal of the court to give the instruction prayed, and to the opinion of the court as given, the defendants excepted, and the verdict and judgment being against them, they appealed to this court.

The cause came on to be argued before ARCHER, DORSEY, and CHAMBERS, Judges.

PRATT, for the appellants, contended:

1. That there was nothing in the relation which the parties bore to each other, or in the nature of their dealings, which prevents the application of the act of limitations to this case as to ordinary cases.

If the transactions constituted a trust, limitations were still a bar. In equity to prevent the operation of the statute, the trust must be a contingent one; in a court of law no such exception can be taken to the act. The statute applies at law whenever an action can be brought on the trust at law. The rule only applies to trusts, exclusively cognizable in equity. *Angel. on Lim.* 349, *Green's executrix vs. Johnson, et ux,* 3 *Gill and John.* 391. And although the transactions here might constitute a trust, or the money when collected considered in the hands of a fiduciary, still in a court of law the bar exists. The rule applies to all constructive trusts—to

banks as well as to individuals. The policy of applying it to banks is the stronger, as they have officers constantly employed to investigate and settle their accounts.

2. That if as a general rule limitations would not apply to dealings between banks, there are, nevertheless, circum-stances in this case which take it out of the operation of such general rule, and make the plea of the statute a bar to the plaintiffs' right of recovery.

It would be difficult to show that the *Farmers and Me-chanics' Bank* was a depositor with the *Planters' Bank.* The action was brought for collections. The dealings terminated in 1829. The balance arises from mutual dealings—not on claims sent from *Georgetown* to *Prince George's.* Each bank places the proceeds of collected notes to the credit of the other, though not as a depositor. A depositor has the right at any moment to call for his deposite. His right results not from mutual dealing, but from a deposite for safe keeping. The correspondence shows this a disputed claim : and no settlement appears since 1821. The accounts are admitted to be erroneous. The character of a deposite can no longer then be claimed for it, and the ground of an exception to the statute therefore fails. The act begins to run from date of the right of action. *Darnall's executors vs. Magruder,* 1 *Har. and Gill,* 439. If a demand was necessary in this case to found a right of action, it exists here. It is implied in all the correspondence. The necessity for it was superseded. There was a denial of the debt—a refusal to pay any thing, from which the act began to run.

3. If the appellant is in error on these points, and the case is not one to which the act of limitations would apply in a proper form of pleading, yet upon the pleadings as they stand, the plaintiffs cannot avail themselves of an exception from the operation of the statute.

Under the second exception, if a demand was necessary to enable the plaintiffs to sue in this case, the suspension of the bank, and notice to creditors of inability to pay, dispenses with a demand, and authorizes an immediate suit. *Law*

*Library*, 71. Shutting up a bank, so that a demand thereat is impossible, is a declaration to all the world, that it will not pay, and demand is not necessary to enable a party to sue.

The prayer is, that failing in 1829—dealings ceasing— no indebtedness since recognized—then the jury may find the statute a bar. The appellees insist that, they know nothing of these facts, and that the statute had no application—but knowledge is clearly inferable from the facts which went to the jury.

Can the appellees under the pleadings take advantage of their alleged exemption from the statute of limitations? They have taken issue on the plea of the statute, and their declaration shows no exemption from the statute as a trust. The pleadings should state the facts on which an exemption is founded. 3 *Gill and John.* 391. Where there is a trust it should be so pleaded; the fact of trust should specially appear.

The appellees may say that no exception to the statute need be pleaded, but the savings in the statute itself, and where the exemption does not arise from the savings that it is matter of evidence. This, however, is against the principles of the decision last cited.

Where a fraud is discovered within three years, this is an exemption from the statute, though it contains no exception in regard to fraud, but the fraud must be specially replied. *Chit. on Con.* 313.

Upon the third exception he contended that the court erred in rejecting the appellants' prayer, and in the instruction actually given, upon the ground, among others, that the instruction assumes matter of fact which should have been submitted to the jury. *Farmers' Bank of Maryland vs. Duvall*, 7 *Gill and John.* 60.

C. Cox, for the appellees.

This is an action on the case instituted on the 15th November, 1834, by the appellees against the appellants, to recover a balance due the former, as a depositor with the

latter, and which the latter on the '28th August, 1834, refused to pay over.

The dealings between the parties as shown by the record, extended through several years, down to sometime in the year 1829, but the controversy presented to this court in the bills of exceptions, is limited to the proceeds of certain notes, drafts and checks, admitted to have been transmitted to the appellants by the appellees for collection, from January, 1828, to the year 1829; to have been duly collected by the former, and as collected carried to the credit of the other as deposites, according to the course of dealings between the parties.

Against this claim, the justice of which is established by the admission of the appellants of record, it sought in the court below to defend itself under the statute of limitations. This defence was overruled by that court, and their decisions on the several questions in which it was presented, are now brought by the appellants before this tribunal for review. It was a concession in the court below, as sufficiently shown by the bills of exceptions, that the ordinary relation between a bank and its depositor is strictly fiduciary, not admitting during its undisturbed continuance, an action at law, and so not within the operation of the statute of limitations. But it was supposed by the appellants, that this relation was terminated more than three years prior to the institution of the present action: 1st, by the operation of certain facts, offered as evidence of a failure, or refusal on its part to account with, or acknowledge indebtedness to the appellees; and 2d, by the suspension of the appellants in the year 1829, and these substantially are the only questions intended to be presented for adjudication to the court below, and actually adjudicated by that tribunal.

For the appellees it will be contended :

1. That the concession made in the court below, as to the ordinary relation between bank and depositor, cannot be now recalled, nor can that question be presented to the appellate tribunal for adjudication. But if jurisdiction of the question

be entertained, it will be contended that the law is as stated to have been conceded.

2. The mere *failure* to account or acknowledge indebtedness, cannot change the pre-existing fiduciary relation between the parties, so that at the end of three years from its creation, the statute of limitations can bar the *cestui que* trusts remedy.

3. The record presents no evidence of a *refusal* to account, on denial of indebtedness, prior to August 28, 1834.

1st. The correspondence incorporated in the bills of exceptions evidently refers to a distinct matter, not now in controversy, and if it referred to the same matter, would recognize instead of denying the fiduciary relation between the parties.

2d. The resolution of August 28, 1834, being the only additional testimony on this point, exhibited by the record, is not evidence of an earlier denial of indebtedness or refusal to account.

4. The resolution of August 10, 1829, or the fact of the appellants' suspension in that year, is not brought to the appellees' knowledge for three years or more, before this action was instituted, nor if known to the appellees, was its object or effect to change the pre-existing fiduciary relation between the parties to this action.

The first prayer admitted the fiduciary relation, and the defendants introduced certain facts to escape from its effect. It does not appear affirmatively that the fiduciary relation was disputed in the court below, hence its non-existence cannot now be relied on, and so long as it continued, no right of action at law accrued. When did an action at law accrue to the appellees? From that time the statute began to run, so long as the possession of the fund by the appellants was consistent with, and not adversary to the rights of the appellees, the fiduciary relations continued. This was broken by demand and refusal to pay. *Green vs. Johnson, et ux* 3 *Gill and John.* 395. Until demand no cause of action existed. This is like the case of a factor entrusted to sell the goods of his principal. *Kane vs. Bloodgood,* 7 *John. C. R.* 90, 122. In answer to this it is said, that the dealings

here constituted a simple contract debt payable on demand, and on which the statute operates at once. The case of *Darnall vs. Magruder*, 1 *Har. and Gill*, 439, relates to a debt of that description, but has no application here, it is founded on a precedent duty to pay. 1 *Chitty*, 320. Here the creditor must seek his debtor. The bank is not to seek the depositor. Payment is only to be made at the counter of the bank, the depository. It is like other cases of payments to be made at specified places. It is not a loan which carries interest. No interest accrues until refusal to pay. The use of the money is not implied. The depositor may claim at any moment. The use of the money is inconsistent with the obligation of the bank to pay, incidentally the bank may indulge in some use, but the contract disaffirms any use, and engages to pay on demand. A re-payment may be demanded immediately after the deposite. The argument from inconvenience may be relied on. But the banks are creatures of the legislature, they are established for public convenience—as safe depositories for disbursing officers—or trustees of the courts. Are these to be cut off after three years? Can the banks close their doors to such creditors after that period? It is argued that the original relation of the parties was changed more than three years.—The evidence is relied on for this. It is said, a failure to acknowledge the claim for more than three years creates a bar. As to refusal to account the record shows none until 1834. The time of the claim was from January 1828 to 1829. In February, 1828, the appellants transmitted an account to the appellees. The correspondence does not relate to a present claim; but to a prior account. The evidence does not include the whole correspondence, but it sufficiently shows that all differences in the accounts were reconciled, and nothing left open but dealings from 1828. The whole correspondence admits the fiduciary relations, and a mere difference in the state of the accounts cannot change that relation.

The resolution was not brought to the knowledge of the appellees. One of the parties sought by an adoption of a

resolution, and publication of it, to affect us with it. But we are only to be affected by actual or constructive notice—as by proof that the appellees took the paper in which the notice was published. Being correspondents, the appellees were entitled to special notice. The refusal of the court is justified by the absence of evidence as to this resolution. The object of the resolution of 1829, was not to change the relation between the bank and its depositors. It did not apply to depositors. It is supposed the Bank declaring itself insolvent stopped the former relation, and this without our knowledge. This would be a premium to dishonesty—a silent unknown resolution would work all the mischief. *Chitty on Bills*, 317.

The last instruction assumes no matter of fact. It does not decide that any money was collected. It assumes no definite sum, but such sum as was collected, leaving that to the jury.

J. Johnson, in reply.

1. There was nothing in the relation of the parties to each other, or in the nature of their dealings to prevent the application of the statute of limitations to any balance which might be due from one to the other. Nor is there any thing in the shape in which the question is presented by the record, which prohibits its discussion here.

The evidence and prayers in the first exception, raise the general question of the applicability of limitations to such a claim as the plaintiffs sought to recover. The prayers, to be sure, go further and place the defence upon narrower grounds than the circumstances of the case justified; but though the defendants thought proper to do this, it by no means follows, that they are not entitled to the benefit of the broader and more comprehensive ground, that independently of special circumstances, the plaintiffs' claim is barred by the statute.

In discussing this branch of the case, it is to be conceded, that the plaintiffs' claim is subject to the operation of the statute, and that the court would so have decided, if an appli-

cation for that purpose had been made to them; and the attempt is, to escape the effect of the bar, upon the ground, that the defendants did not present the general question, but rested their defence upon special and peculiar circumstances. But can such an attempt be successful? A party prefers a claim barred by limitations, which are regularly pleaded against it. At the trial, a variety of facts are proved, of a tendency to strengthen the defence, and then, because the defendants apply to the court to instruct the jury, that if they believe these facts, the plaintiffs are not entitled to recover, it is the duty of the court to refuse the prayer, and suffer the plaintiffs to obtain a verdict; although, even without those facts the plaintiffs would not be entitled to recover. In such a case, it is clearly the duty of the court to say, that whether these particular circumstances do, or do not exist, the action is barred by the statute, and the plaintiffs cannot recover. In proving the special circumstances detailed in the first exception, the defendants performed an act of supererogation, but this surely cannot deprive them of the benefit of the statute, if their case is of such a nature as to entitle them to it.

If the defendants are at liberty to discuss the general question of the applicability of the act of limitations to the plaintiffs' claim, what is there in the relation of the parties, or in the nature of their dealings, which exempts it from its operation?

It will not avoid the bar, to say that the money was held by the defendants in trust, for all trusts are subject to the statute, except those purely technical trusts, which are alone cognizable in equity. *Angel. on Lim.* 349, &c. *Kane vs. Bloodgood,* 7 *John. Ch. R.* 90. *Coster vs. Murray,* 20 *John. Rep.* 576, 610. If an action at law may be maintained, a trust is as much within the operation of the statute as a mere legal demand. Technical trusts, of which chancery has exclusive jurisdiction, are not within the scope of the statute, because there being no remedy at law, the analogies of the latter *forum* cannot be borrowed, and the act of limitations in terms, is not applicable to courts of equity. But where the

courts of law and equity have concurrent jurisdiction, the plaintiff cannot, by seeking the one or the other court, deprive his adversary of a protection given him by statute.

2. But supposing the general question to be against the appellants, and that apart from special circumstances, limitations would constitute no bar to the plaintiffs' claim. Are not the special circumstances of this case sufficient to constitute such bar?

The only ground upon which the plaintiffs can claim exemption from the statutory bar is, that no right of action existed, without a preliminary demand of the money at the counter of the defendants, for there can be no doubt, that the statute is in motion from the time of the accrual of the cause of action. *Darnall vs. Magruder,* 1 *Har. and Gill,* 439.

Conceding, for the sake of the argument, that this is the case, when money is placed in deposite with a bank, and the depositor has no reason to believe that his demand will be disputed when made; are there not many circumstances in this case which place this particular claim upon a totally different footing?

The dealings between the parties altogether ceased in 1829, and from that time down to the institution of this suit, repeated but fruitless efforts were made to adjust the accounts. The plaintiffs, in the correspondence of 1828, were distinctly informed, that the claim as asserted, was controverted, and of course they might at once have instituted this suit. To have made a demand at the counter of the defendants, after being told in advance, that they would not be paid, would, to say the least, have been a very idle ceremony, too idle, one would suppose, to be an essential pre-requisite to the commencement of a suit. And not only were the plaintiffs informed that their claim would not be paid, because it was disputed, but they were also advised that it *could* not be, in consequence of the general inability of the defendants to meet their engagements.

In August, 1829, more than three years before suit brought, the defendants suspended cash payments, and discontinued banking operations, and gave public notice thereof in the

papers of the day. This notice, it was in proof, was published in the District of Columbia, where the institution of the plaintiffs was situated, and though no express proof of notice to the plaintiffs was offered, there was abundant evidence from which the jury might have inferred it.

In view of all the circumstances of the case it is hardly possible to suppose, but that the plaintiffs had notice of the fact, and if they had, it would seem to be indisputable, that the right to sue was perfect without any previous demand.

Can there be a doubt, that from the time of this suspension and annunciation, the defendants were chargeable with interest upon all their debts, and if so, there must have been an immediate right of action. *Darnall vs. Magruder*, 1 *Har. and Gill*, 439. There was evidence tending to prove all the facts upon which the prayers of the defendants in the first and second exceptions repose, and if there was, they should have been granted. He further insisted, that if a previous demand of the defendants was necessary to the institution of a suit, there could be no recovery in this case, because there is no proof of such demand.

3. But conceding both those questions to be with the plaintiffs, and that their claim is not within the statute, either upon general or special grounds; still, the plaintiffs cannot recover upon the case as exhibited by the pleadings.

They have taken issue upon the plea of limitations, which admits its legal effect, and presents the single question, whether, in *point of fact*, the cause of action accrued three years or more before suit brought. *Green vs. Johnson*, 3 *Gill and John*. 389. *Blanch. on Lim.* 89. If the action did, in fact, accrue three years or more before suit, and there was no subsequent recognition or acknowledgment of indebtedness, the claim is barred upon the pleadings as they stand, no matter what the character of the claim may be. The plaintiffs should so have declared, as that the plea of the statute might have been demurred to, or else they should, by a special replication, have presented the grounds upon which they claim immunity from the statute. Having done neither, they have no

right to avoid the question *of fact*, which they have chosen themselves to try, and present a legal question not involved in the pleadings.

4. Upon the third exception he contended, that the court, in their instruction, assumed matters of fact which should have been submitted to the jury.

The statement in the first exception is, that the plaintiffs *gave evidence* merely of a balance due them, and of the collection of notes, &c.. Yet the court instruct the jury, that the defendants did in fact collect, which, of course, precluded them from denying such collections, as they might otherwise have done, notwithstanding the plaintiffs' proof. It was the province of the jury to decide upon the proof, and to say whether it was credible or not. *Farmers' Bank of Maryland vs. Duvall*, 7 *Gill and John.* 45.

But there is a further objection to the instruction in this exception. The previous accounts between the parties were settled in 1821. From that time, down to 1829, there had been an uninterrupted series of dealings, and consequently in the adjustment of the accounts between those dates, all the transactions should be brought into view.

The plaintiffs ought not to be permitted to single out particular items of charge, and claim to recover upon them, when, perhaps, upon the whole account if exhibited, they would be brought in debt.

DORSEY, Judge, delivered the opinion of the court.

Had the usages of banks (the existence of which, the several prayers in this case made to the court appear to assume, and the argument on both sides impliedly yields, viz: that where a current deposite of money is made in a bank, in the absence of all special stipulation to the contrary, it is to be paid to the depositor upon demand at the counter of the bank, and that where a note or draft deposited in a bank for collection is paid, the net proceeds of the amount thereof is carried to the credit of the depositor, and is held by the bank collecting it in all respects as if it were a cur-

rent deposite of money) been proved to the jury, and submitted to their finding, it would materially influence the decisions of this court, in many of the determinations of the county court, which we are called on to review. But these usages, however well known and recognized by the community at large, and adopted in all their transactions with the banks, not being of proof in the record before us, nor heretofore proved and established in courts of justice, cannot be judicially known to us, or sanctioned as general mercantile usages, which are a part of the law of the land, and our adjudications on the acts of the court below, must be made as if no such usages had ever existed. In this aspect of the case, the county court were clearly in error in refusing the defendants' first prayer in the first bill of exceptions, the act of limitations being a conclusive bar to the action whether "the defendants have refused to settle or allow the claim asserted by the plaintiffs," or not. For the same reason the county court were wrong in their refusal of the defendants' *second, third, fourth,* and *fifth* prayers in the first bill of exceptions; although in the three former, the fact of a subsequent recognition by the defendants of the plaintiffs' claim within three years before the institution of this suit (which would have removed the statutory bar) was not submitted to the finding of the jury. There being no evidence offered of such subsequent recognition, the court properly withdrew that fact from the consideration of the jury.

To test the accuracy of the county court's refusal to grant the defendants' prayer in the second bill of exceptions, we will assume, as the prayer does, that the existence of the aforementioned usages of the banks was to be judicially recognized by the court, ought the prayer then to have been granted? We think not. Before the act of limitations commenced running against the plaintiffs, payment of their claim must have been refused by the defendants, or some act must have been done by the defendants (a knowledge of which is brought home to the plaintiffs) dispensing with the necessity of a demand of payment at the counter of the *Planters' Bank,*

Such dispensation is abundantly furnished by the acts of the defendants on the 10th of August, 1829.  But were those acts known to the plaintiffs (without which knowledge the act of limitations does not commence running against them) is the question?  The prayer of the defendants calls on the court to assume the fact of knowledge, and for that reason as the point was presented to them, they very properly refused the prayer.  Although the facts submitted to the finding of the jury furnish strong evidence of the plaintiffs' knowledge thereof, yet they are not of that conclusive character to warrant the court in assuming the plaintiffs' knowledge, and in the withdrawal of the determination of that fact from the hands of the jury.  But the court erred in not granting this prayer, because the fact of the existence of the banking usages referred to, not being in proof, could not enter into the consideration of the questions before them, and the act of limitations being a bar to the plaintiffs' action, whether the alleged acts of the defendants ever occurred or not, or whether the plaintiffs had a knowledge thereof or not, the finding of the facts submitted to the jury, could not interfere with the running of the act of limitations, and therefore the prayer of the defendants ought to have been granted.  In our remarks upon this bill of exceptions, we wish it to be understood, that we by no means accede to the doctrine in the defendants' prayer, and urged in the argument of this cause, that mere fiduciary relations between the parties to a suit, in respect to the matters in controversy, *per se*, prevent the running of the act of limitations.   There is in a court of law no such bar to the operation of the act of limitations as "*trusts*," otherwise than as shewing the terms of the contract between the parties, and time at which the plaintiffs' right of action accrued, and thus avoiding the statute by shewing that by the terms of agreement sued on, there has been no such lapse of time, since the right to sue commenced as would create a bar.   See the case of *Green, ex'r* of *Green vs. Johnson, ex'r,* 3 *Gill and John.* 391.   From the views we have taken of this matter of trust, it is unnecessary for us to

determine, whether conceding it to be an available defence against the act of limitations in a court of law, the plaintiffs could avail themselves of it in the present state of their pleadings.

Giving to the opinion of the county court in the *third* bill of exceptions, that construction to which in fairness we think it entitled, we see in it nothing of which the defendants have any just ground to complain. To obtain a verdict the plaintiffs were not bound to produce their running account with the defendants and prove all the items thereof, and claim nothing but the balance thus appearing to be due, but they were at liberty to prove any isolated receipt of money by the defendants and claim a verdict for the amount thereof, unless in the language of the court below, " the defendants can shew satisfaction thereof, or an indebtedness on the part of the plaintiffs, in the course of the dealings, which took place subsequent to the year 1821, or before, if the settlement then made was in any respect or particular incorrect." By this instruction the court do not mean, as has been supposed, to confine the *Planters' Bank* exclusively to testimony offered by itself; but it may take advantage of the testimony adduced by the plaintiffs, to shew the balance of the accounts between the parties from January 1828 to 1829. The rejection of the defendants' prayer in the third bill of exceptions meets our concurrence.

We concur with the county court in their opinion and instruction given to the jury, and in their refusing the defendants' prayer in the third bill of exceptions; but dissenting from their refusals to grant the defendants' prayers in the first and second bill of exceptions, we reverse their judgment.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.