# WILLIAM COLTON and SIMON P. SCHOTT, Receivers *vs.* THE DROVERS' PERPETUAL BUILDING and LOAN ASSOCIATION OF BALTIMORE.

*Receivers—Banks—Set Off—Right of Depositor in Insolvent Bank to Set Off Claim for Deposit Against Claim of Receivers on a Note.*

A depositor in a bank was indebted to it in a sum greater than his deposit, on a promissory note which matured after the insolvency of the bank and the appointment of receivers. *Held*, that the depositor is entitled to set off the amount of his deposit against his indebtedness on the note and is only required to pay to the receivers the difference between the two.

Although the general rule is that a depositor cannot maintain an action against a bank to recover the amount of his deposit until he has made a demand, yet in an action by the bank against the depositor the latter may set off the amount of his deposit against a claim of the bank without a previous demand nor is a demand necessary when the bank has suspended payment or been placed in the hands of receivers.

Appeal from the Circuit Court No. 2, of Baltimore City, (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Wm. S. Bryan, Jr.,* (with whom was *Martin Lehmayer* on the brief), for the appellants.

Insolvency of the debtor who is enforcing a counter claim is often taken as a ground for allowing an equitable set-off. But this is always where, under the circumstances of the case, equity and natural justice is gratified by allowing the set-off. But in every case where an allowance of a set-off would defeat equity and not work out natural justice, it is clear on principle that the set-off should not be

allowed.    Both moral right and the statute law require the assets of the South Baltimore Bank to be administered among its creditors *pari passu* and without preference. Equity is equality.    Any allowance of the set-off which would defeat these just principles would not commend itself to the conscience of the chancellor, and would not therefore be permitted.

And again, and on the narrower ground of the special powers and duties of receivers under the Act of 1896, set-off should not be allowed.

These receivers, by virtue of their office, become entitled to a negotiable promissory note which has not reached maturity.    They must collect it as any other person having a legal transfer of the note, unless they are prevented by some provision of the statute from which they derive their powers.    No equitable principle can or ought to arrest the exercise of these powers.    It would be something new to maintain that the purchaser of a negotiable note from a bank before its maturity could not recover the full amount from the maker, if the latter had a bank account.    Most merchants have bank accounts somewhere, and they are apt to have them in the banks where their notes are discounted. The largeness of the bank account would ordinarily increase the commercial value of the note instead of deterring purchasers by the fear of a set-off.

No claim which matured after the appointment of the receiver, and after title to such claim had vested in the receiver, is subject to a set-off by reason of any independent or collateral indebtedness of the bank to the person liable on this after-maturing claim, by reason of the collateral fact of the deposit of the money in the bank at other times by such debtor on such maturing claim.    *Balch* v. *Wilson*, 25 Minn. 299 ; *Stephens* v. *Schuebman*, 33 Mo. App. 333 ; *Haxton* v. *Bishop*, 3 Wendell, 13 ; *Wheeling Bridge Company* v. *Cochran*, 68 Fed. Rep. 144 ; *Clark* v. *Brockway*, 42 N. Y. 13 ; *Beach on Receivers*, secs. 702, 703, 705 ; *In re Paragassu Steam Tram Road Co.*, L. R. 8 Ch. App. 254 ;

*High on Receivers*, sec. 252 ; *U. S. Trust Co.* v. *Harris*, 2 Bosworth, 76 ; *Bosler's Admrs.* v. *Exchange Bank*, 4 Pa. St. 32 : *Williams* v. *Traphagan*, 38 N. J. Eq. 57 ; *Venango Bank* v. *Taylor*, 56 Pa. St. 16 ; *Osgood* v. *Ogden*, 4 Keyes, 70.

An assignment was made for the benefit of creditors, and part of the assets consisted of a sum on deposit in a bank. The assignee made demand for the deposit, and it was refused. He brought suit. After the demand, but before suit, a note made by the assignors matured, which was held by the bank at the date of the assignment. It was held that it could not be set off in the suit by the assignees. *Aliter*, if it had matured before the assignment. *Chipman et al.* v. *Ninth National Bank*, 120 Penna. St. 86.

Where no right of set-off exists when an assignment by an insolvent debtor for the benefit of creditors is made, it cannot arise afterwards in favor of one indebted to the insolvent estate who is also a creditor. Where, therefore, among the assets transferred by such an assignment was a note against one who, at the time the assignment was made, held a note against the assignor which had not then matured, it was held that he was not entitled to a set-off; and this, although his claim against the estate matured before that against him. *Fera* v. *Wickman*, 135 N. Y. 226.

A bank cannot set off against a deposit to the credit of an assignor for the benefit of creditors a note held by it against him, but not due at the time of the assignment. *Oatman, Assignee*, v. *Batavian Bank*, 17 Wis. 501.   See also—*Mechanics' Bank* v. *Stone*, 74 N. W. Rep. 204 ; *Van Dyck* v. *McQuaide*, 85 N. Y. 616 ; *Frawzen* v. *Xammer*, 90 Hun. 104 ; *Nettels* v. *Huggins*, 8 Rich. (S. C.) 273 ; *Smith* v. *Mosby*, 9 Heiskell, 501 ; *Lanier* v. *Gayoso Sav. Inst.*, 9 Heiskell, 506.

*L. P. Henninghausen*, for the appellee, cited : *Dowler* v. *Cushwa*, 27 Md. 367 ; *Eversole* v. *Maull*, 50 Md. 104 ; *Van Wagoner* v. *Paterson Gas Co.*, 3 Zab. 283 ; *High on Re-*

*ceivers*, secs. 245–249 ; *Scott* v. *Armstrong*, 146 U. S. 507 ; *Marshall* v. *Fisher*, 43 Md. 46 ; *Lindsay* v. *Jackson*, 2 Paige, 581 ; *Morse on Banking*, 50 ; *Bruyn* v. *Receivers*, 9 Cowen, 413 ; *Bump on Bankruptcy*, 91 ; *Drake* v. *Rollo*, 3 Biss. 273 ; *Waterman on Set-Off*, sec. 131 ; *Demmon* v. *Boylston Bank*, 5 Cush. 194 ; *Yardley* v. *Clothier*, 51 Fed. Rep. 506, 17 L. R. A. 462 ; *Armstrong* v. *Warner*, 49 Ohio St. 376, 17 L. R. A. 466 ; *Davis* v. *Industrial Mfg. Co.*, 114 N. C. 321 ; 23 *L. R. A.* 322 ; *Smith* v. *Felton*, 43 N. Y. 421 ; *Holbrook* v. *Receivers*, 6 Paige, 220 ; *Grannon* v. *Kimball*, 92 U. S. 371 ; *In re Hatch*, 155 N. Y. 401, 40 L. R. A. 664 ; *Smith* v. *Fox*, 48 N. Y. 674 ; *Richards* v. *La Tourette*, 119 N. Y. 54 ; *Rothschild* v. *Mack*, 115 N. Y. 8 ; *McClagg* v. *Woodman*, 28 Ill. 84 ; *Finnell, &c.*, v. *Nesbit*, 16 B. Mon. (Ky.) 351 ; *Northampton Bank* v. *Balliet*, 8 Watts & Sarg. 311 ; *Aldrich* v. *Campbell*, 4 Gray, 284 ; *Jordan et al., Assignees*, v. *Sharlock*, 54 La. 366 ; *Morrow's Assignee* v. *Bright*, 20 Mo. 298 ; *Smith's* v. *Spengler*, 83 Mo. 408 ; *Clark* v. *Hawkins*, 5 R. I. 219 ; *Skiles* v. *Houston*, 110 Pa. St. 254 ; *Bigelow* v. *Folger*, 2 Met. 255.

BOYD, J., delivered the opinion of the Court.

A bill was filed in the court below against the South Baltimore Bank, a corporation of this State, on the 24th day of February, 1898, asking for the appointment of a receiver and that the bank be declared insolvent. An answer was filed the same day, admitting that the bank was insolvent and consenting to the appointment of a receiver. One of the appellants was appointed on that day and afterward the other was appointed co-receiver. On the first day of June, 1898, a decree was passed adjudicating the bank insolvent and determining it was so when this bill was filed. The receivers proceeded with the discharge of their duties, and in due course the case was referred to the auditor to state an account distributing the assets of the bank. When the bill was filed, the bank held a promissory note of the appellee for one thousand dollars, which

became due on March 2, 1898, and the appellee had a deposit with the bank of $357,25. At the maturity of the note the appellee tendered the receiver, then in office, the sum of $642.75 in payment of said note, claiming the amount of the deposit as a set-off, and demanded the note, but the receiver refused to accept that amount. Subsequently that sum was accepted under an agreement that it should be credited on the note without prejudice to the receiver's claim for the balance and that no suit should be instituted until it was determined whether the appellee was entitled to set off the deposit against the balance due on the note. The auditor refused to allow the set-off, but distributed to the appellee its proportionate dividend as a creditor. Exceptions were filed to the audit, which were sustained, and a decretal order was passed directing the receivers to allow the association the deposit as a set-off against the balance due on the note. From that order this appeal was taken by the receivers with the permission of the Court, it being represented that there were a number of other claims that would be affected by the decision.

The question therefore to be determined by us is, whether the appellee is entitled to set off the amount of its deposit with the bank, at the time of its failure, against the balance due on the note, under the circumstances we have stated. Several reasons have been assigned by the appellants in support of the position that the appellee is only entitled to receive a distribution on the amount of the deposit, as other creditors are : 1. One ground relied on at the argument was that a depositor in a bank cannot maintain a suit for his deposit unless he has previously made a demand for it and that no demand was made in this case. " It is now perfectly well settled that the relation between banker and customer, who pays money into the bank, or to whose credit money is received there on deposit, is the ordinary relation of debtor and creditor." *Hardy* v. *Chesapeake, Bank,* 51 Md. 585. And it is equally well settled that a depositor cannot, as a general rule, maintain an action to recover his deposit

until he has first made a demand for its payment. 3 *Ency. of Law* (2nd ed. ) 838. But while that is true, there may be circumstances under which no demand is necessary prior to bringing suit, and on page 839, of the volume of the *Encyclopedia of Law*, above referred to, it is said that, "where the bank has suspended, or where for any other reason it would be manifestly futile to make demand, none need be made." In the case of *Planters' Bank* v. *Farmers' and Mechanics' Bank*, 8 G. & J. 449, it was held that the necessity for a demand would be dispensed with by the suspension of specie payments and discontinuance of banking operations, by the bank, provided those acts were known to the plaintiff and from the time of such knowledge the statute of limitations would begin to run. It would have been " manifestly futile to make demand " on the bank, or the receiver, for the amount of deposit and if the appellee had sued, the fact that a demand was not previously made would not have defeated the action.

If the bank had not failed and had sued the appellee for the amount of the note it would not have been necessary for the latter to have proven a demand for the deposit, prior to the time suit was instituted by the bank. A defendant can set off against a plaintiff's demand a note of the plaintiff which matured after the commencement of the action. *Clarke* v. *Magruder*, 2 H. & J. 77. As early as *Whittington* v. *Farmers' Bank*, 5 H. & J. 489, our predecessors held that the defendant in an action by a bank on a promissory note against him may set off against the claim of the bank any money he has in bank, and it is not intimated that a previous demand was necessary in order to enable him to do so. The bank being a debtor to the depositor the right to set off such deposit is within the very terms of our statute and hence in a suit by the bank the claim for the deposit can be set off, although no previous demand for it had been made. That being so, it would seem to be clear that no demand would be necessary in order to enable the defendant to set off the amount of the deposit against a claim made by the receiver of the bank,

if there be no other reason for not allowing it. In *Morse on Banks and Banking* it is said " where the bank itself stops payment and becomes insolvent, the customer may avail himself in set-off against his indebedness to the bank of any indebtedness of the bank to himself, as, for example, the balance due him on his deposit account. So also even though the debt to him has not matured at the time of the insolvency." This may be done whether a demand had or had not been previously made. *Fort* v. *McCully*, 59 Barb. 87 ; *Seymour* v. *Dunham*, 24 Hun. 93.

2. We come then to the main question in the case. It is argued that to allow the set-off would be, in effect, to give the appellee a preference over the other creditors of the bank and that it is the duty of the receivers to distribute the assets *pro rata* and not to pay in full any one creditor. If the appellee was merely a creditor that argument might prevail, but that was not the relation that existed between the two. The appellee was not only a creditor to the amount of its deposit, but it was a debtor to the amount of the note held by the bank. Its debit was larger than its credit and if the bank had not failed, it could only have recovered the difference between the two. Do the receivers occupy any better position ? The general rule undoubtedly is that a receiver takes subject to set-offs which the defendant might have set up against the original owner. See 22 *Ency. of Law*, 308, and note to *Merrill* v. *Cape Ann Granite Company*, 23 L. R. An. 313, where many authorities are collected. There are some exceptions to the rule, one of which may be mentioned, although not directly involved in the case, as some of the authorities cited by the appellants are to that point, and that is that a claim obtained after the commencement of the proceedings, which resulted in the appointment of a receiver, should not be allowed as a set-off unless there be some statute authorizing it to be done. In this case, however, the debt was due by the bank to the appellee before the proceedings under which the appellants were appointed were instituted. As we have seen, the rela-

tion of debtor and creditor existed, and the question discussed above as to whether demand must be made before suit can be brought, does not in any wise reflect upon the question of *indebtedness*, but only on the right to sue for the indebtedness before demand is made.

But it is said on behalf of the appellants that inasmuch as the note fell due after the appointment of the first receiver, he took it free from all equities—just as a *bona fide* purchaser for value would have done, and that a claim in favor of the bank which did not mature until in the hands of the receiver is not subject to a set-off by a claim which existed against the bank before the receiver's rights accrued. In short, that in one case the debt is due by the bank to the customer, and in the other by the customer to the receiver. If that were strictly correct there would be some ground for the contention, for if, for example, the appellee had purchased some property from the receiver, it would not be permitted to set-off its claim against such indebtedness to the receiver, for it would thereby not only obtain an unwarranted preference over other creditors, but it would prevent a proper settlement of the insolvent estate, and moreover, they would not be mutual claims.   But when the receiver was appointed he took the assets of the bank, and amongst those assets was this note.   It was a debt already incurred by the appellee and payable to the bank when due. By reason of the fact that it was payable to and held by the bank it was an asset that became vested in the receiver, and he took it subject to the equities existing between the appellee and the bank. Although there are some authorities to the contrary, the great weight of authority is to the effect that the fact that the claim thus held by the receiver does not mature until after his appointment does not prevent a defendant from using his claim as a set-off.   Among other decisions are *Berry* v. *Britt*, 6 Bosw. 627 ; *Scott* v. *Armstrong*, 146 U. S. 499 ; *Platt, Receiver,* v. *Bentley*, 11 Am. Law, Reg. 171 ; *In re assignment of A. S. Hatch,* 155 N. Y. 401 ; *Northampton Bank* v. *Balliet,* 8 W. & S. 311; *Ald-*

*rich* v. *Campbell*, 4 Gray, 284 ; *Smith* v. *Spengler*, 83 Mo.
408 ; *McClagg* v. *Woodman*, 28 Ill. 84 ; *Armstrong* v. *War-
ner*, 49 Ohio St. 376 ; *Yardley* v. *Clothier*, 51 Fed. Rep.
506 ; *Skiles* v. *Houston*, 110 Pa. 254. See also note to
*Fera* v. *Wickham*, 17 L. R. A. 456. Some of these cases
make a distinction between a technical set-off in suits at law
and cross-demands allowed by Courts of Equity, but as we
are now considering a distribution in a Court of Equity all
of the cases can properly be referred to here.

3. But it is contended by the appellants, that if it be con-
ceded that the general rule is as we stated about the rights
of the receivers, they occupy a different position by reason
of our statute.    Section 264 A of Article 23 (Act of 1896,
ch. 349), provides that when a corporation has been deter-
mined or proven to be insolvent and dissolved in accordance
with section 264.    "All of its property and assets of every
description shall be distributed to the creditors of said cor-
poration in the same manner that the property and assets of
an insolvent debtor are distributed under the provisions of
Art. 47 of the Code.    *    *    *    *    and the date of the
filing of the bill against such corporation, upon which it
may be dissolved, shall be taken and treated for the purpose
of determining the validity of preferences and for all other
purposes, as the date of the filing of the petition in insol-
vency by or against a natural person."    In short, receivers
of corporations that are dissolved under that statute are
placed on the same basis as trustees in insolvency of natural
persons and the date of filing the bill is the time fixed to
determine the *status* of the parties affected by it.    But sec-
tion 11 of Art. 47 of the Code provides that "the estates
of the insolvent shall be distributed under the order of the
Court according to the principles of equity."    While set-
off in equity is generally governed by the same principles
as at law, Courts of Equity sometimes allow a set-off where
for some technical reason it could not be allowed at law.
The insolvency of the party against whom it is claimed fre-
quently affords equitable ground for allowing it.    A tech-

nical set-off is wholly of statutory origin, but Courts of Equity exercise an original jurisdiction over the subject and will when reason and justice require it enforce a counter-claim though not within the letter of the statute. *Smith* v. *Donnell*, 9 Gill, 84, and *Manning* v. *Thurston*, 59 Md. 218, are instances of such equitable relief. It would sometimes work great injustice to customers of banks if they should be required to pay in full their indebtedness to the bank and only receive a dividend on their deposits. A customer might from time to time make deposits in bank with a view to meet his note held by it and it would manifestly be a great hardship, if, under those circumstances, he could not apply his deposit towards the payment of the note, because the bank had failed and a receiver had been appointed. A Court of Equity would certainly not permit such unjust results in the distribution of funds before it, if such facts were proven, and although in this case there is no evidence that the deposit was made with special reference to the maturity of the note, yet as it became due a few days after the receiver was appointed, it might well be inferred that the appellee had that fact in view in making the deposits. If the bank had not failed it could have applied the deposit of the appellee towards the payment of the note, 3 *Ency. of Law* (2nd ed.) 828 and 835, *Miller* v. *Farmers' and Mechanics' Bank*, 30 Md. 392, and it would be unreasonable to permit a receiver of an insolvent bank to collect the note in full without allowing the set-off, particularly as the bank had a lien on the deposits. " The bank holds a lien upon the deposits in its hands to secure the repayment of the depositor's indebtedness, and may enforce that lien as the debts mature, by applying the debtor's deposits upon them, thus setting the two off against each other." 3 *Ency. of Law*, 835 ; *Miller* v. *Bank, supra*. If the appellee was not financially responsible,and had attempted to assign its claim for deposits against the bank to a third person, could there have been any question about the right of the receiver to insist upon the application of the deposit to the payment of the note ?

Clearly not, as the assignee of the claim would have taken it subject to equities existing between the appellee and the bank, and a Court of Equity would have protected the bank or its representatives, the receivers. *Marshall et al.* v. *Cooper*, 43 Md. 46. It would seem clear, then, that at least in equity the deposit should be allowed as a counter-claim or set-off.

But even at law it should be allowed against the receivers. It is true that a trustee appointed under our insolvent laws does not occupy precisely the same position that an ordinary trustee under a conventional deed of trust does, as he has greater powers and represents the creditors. He can, for example, have a deed made by the insolvent in fraud of his creditors set aside, which an assignee under a voluntary deed of trust cannot do, because the latter can only do what his assignor could. But the insolvent law does not vest him with such powers as would enable him to collect more than is actually due the insolvent, and there was only actually due the balance between the two accounts. " All the property of every description, rights and claims *of the insolvent*" vest in the trustee, and if the insolvent has disposed of any of his property in violation of the .insolvent law it is void and the trustee can recover it. It could not be successfully contended that the creditors of an insolvent could deprive one who owes the insolvent of the right of set-off, and how can the trustee who represents them do so? Nor can he avoid the right of set-off on the theory that he occupies the position of a *bona fide* purchaser for value. *Haxton* v. *Bishop*, 3 Wend. 13, referred to by the appellants, tends to sustain that position, but that case has not met with approval. See note 17 L. R. A. 458. In *Dowler* v. *Cushwa, Insolvent Trustee*, 27 Md. 354, this Court quoted with approval from *Receivers* v. *Patterson Gas Light Company*, 3 Zabriskie (23 N. J. L.) 291, that "the rule prevades both bankrupt and insolvent laws founded on general principles of equity, that all cross demands, whether connected or independent, provided they be mutual, as between the bank-

rupt or the insolvent and the creditor, shall be set off, and the balance only shall be deemed the indebtedness on one side or the other.   The assignees take a bankrupt's property in the same condition, and subject to the same burthens as the bankrupt himself held it.   On the principle that they are not purchasers for a valuable consideration, but as voluntary assignees and personal representatives, and are therefore distinguished from particular assignees."

Although fully recognizing the distinction between the trustee of an insolvent and one appointed by the debtor in a deed of trust, as made by this Court in previous cases, we cannot adopt the view urged upon us that the former is to be regarded as a *bona fide* purchaser for value of the assets that come into his hands and thereby permit him to deprive a debtor of such a right as that to set off a debt due by the insolvent prior to the institution of the insolvent proceedings, and we find nothing in our statute or in the authorities we feel called upon to follow to cause us to reach a conclusion that, in our opinion, would work such manifest injustice.   It is not claimed that a receiver appointed under the statute referred to can occupy any better position than an insolvent trustee and for the reasons we have given we will affirm the order of the Court appealed from.

> *Order affirmed, the costs to be paid*
> *out of the insolvent estate.*

(Decided November 24th, 1899).