REAL ESTATE BOARD *v.* GEORGE W. PAGE, RECEIVER.

[No. 15, January Term, 1933.]

*Decided April 5th, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Harry E. Karr* and *Philemon B. Coulter,* with whom were *Karr & Colgan* on the brief, for the appellant.

*Herbert Levy,* with whom was *Morris Rosenberg* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

The appellant, the Real Estate Board of Baltimore, on January 9th, 1928, leased from the Chesapeake Bank the seventh floor of the lessor's building at 7 St. Paul Street, Baltimore, for the term of one year beginning February 1st, 1928, at the annual rental of $3,000, payable in advance in monthly installments of $250; the lease providing that it should continue from term to term unless terminated at the end of any term by sixty days' previous notice from either of the parties to the other. The lease did so renew itself until January 8th, 1932, when a lease was entered into between the parties to this case for the year beginning February 1st, 1932, at the annual rental of $2,000.

By appointment of George W. Page, bank commissioner, as receiver of the Chesapeake Bank, on December 9th, 1930, the building passed into his control, and has ever since been managed by him. At the time the bank was closed the appellant there had on deposit $10,635.36, and at the same time owed the bank $250 for the month of December, 1930. On February 9th, 1931, John D. Hospelhorn, deputy bank commissioner, wrote the appellant that the December, 1930, rent was a proper offset against its deposit account, that the rent accruing from January 1st, 1931, is not a proper offset, but the receiver could allow the rent to accumulate against the first receiver's dividend check. On February 12th, 1931, the appellant wrote Mr. Hospelhorn: "We prefer that any rent

which we may owe the Chesapeake Bank or the receiver thereof, which is not a proper offset against our deposit with the bank, be deducted from the first dividend check to be issued by the receiver." A dividend of twenty-two and a half per centum was declared to the bank's depositors, the appellant's distribution being $2,336.75, out of a net deposit account of $10,385.56, after deducting the month's rent due when the bank closed from the deposit of the appellant at that time. The receiver applied the distribution to the rent to October 31st, 1931, leaving a balance due and unpaid to that date, $163.25. The appellant paid the rent for November, 1931, but has refused to pay since then, the rent unpaid to January 31st, 1932, amounting to $3,500, which the appellant claims should be set off by an equal amount of the deposit at the time of the failure.

On July 15th, 1932, the appellant filed its petition for an order directing the appellee to credit the amount of rent accruing from December 1st, 1930, to January 31st, 1932, against the appellant's deposit when the bank closed. The appellee filed a joint answer and demurrer to the petition; the facts in both petition and answer being substantially as here stated. From an order dismissing the petition, this appeal is taken.

The appellant's contention is that a depositor of an insolvent bank, which is also the bank's tenant, is entitled to a set-off in the amount of its deposit against its liability as tenant for unaccrued installments of rent under a lease reserving an annual rent payable in monthly installments, the lease being terminable at the lessor's option in the event of serious damage by fire without fault on the part of the lessee, on the theory that under such a lease there is a present existing indebtedness in the total amount of the annual rent. It is agreed that the rent for December, 1930, should be, as it was, set off against the appellant's deposit. The appellant urges the application of the rule as to set-off followed in *Colton v. Drovers' Perpetual Bldg. & Loan Assn.*, 90 Md. 85, 45 A. 23, in which a depositor was allowed to apply his deposit in an insolvent bank against his unmatured note, on

the theory that the liability was fixed and was owing before the closing of the bank, though not payable until afterwards, and that the execution of the lease before the closing of the bank created a present obligation of the appellant by which it was bound to the end of the term, and that it therefore was entitled to the same right of set-off, after the closing, to which a depositor would be entitled against his unmatured note, and cites *Moale v. Tyson*, 2 H. & McH. 387, and *Consumers' Ice Co. v. Bixler*, 84 Md. 437, 35 A. 1086, in support of the contention. Those cases did hold that the lessees were bound and could be held for the rent reserved by the terms of their respective leases, but they did not say when the rent became a debt. There was no question of set-off in either of them. What the appellant contends is that the contractual obligation of the lessee is a debt owing from the beginning of the lease to the end, and that the rule heretofore applied in this court as to a set-off of a deposit against an unmatured note is equally applicable to the unaccrued rent of one who is also a depositor. There are points of dissimilarity so marked as to leave neither an example nor precedent for the other. The execution and acceptance of the lease by the lessee imposes on it a contractual obligation by which the lessee, in consideration of the monthly installments of rent, was to have the use and occupancy of the lessor's premises, but there was no debt owing the lessor until the first day of each month during the existence of the lease.

In the case of a borrower the entire consideration of his note is turned over to him in cash and the note is the evidence of his present, existing, debt, and it continues to be a debt from its inception to payment. "It was a debt already incurred by the appellee (borrower), and payable to the bank when due." *Colton v. Drovers' Perpetual Bldg. & Loan Assn.*, 90 Md. 85, 92, 45 A. 23, 25. There was nothing further to be done by either of them to establish their relations to the obligation. Their relationship was that of debtor and creditor from the beginning.

In the instant case the relations of debtor and creditor were qualified by that of landlord and tenant, and it was

necessary in the continuance of that relation from month to month for the landlord to furnish to the tenant the use and occupancy of tenantable property, with the various services provided by the lease and usual in an office building. As expressed in *Re Roth & Appel* (C. C. A.), 181 Fed. 667, 669: "Rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of the land is the consideration for the rent. If the right to occupy terminate, the obligation to pay ceases. Consequently, a covenant to pay rent creates no debt until the time stipulated for the payment arrives." See 2 *Tiffany on Real Property* (2nd Ed.), 1461 (sec. 403); 37 *C. J.* 361, sec. 1197. The decisions on the subject-matter of this appeal are generally to the effect that a set-off cannot be allowed for rent accruing after insolvency against a debt due by the insolvent's estate, on the theory that rent is not a debt until it is payable, even though there is a covenant in the lease for the payment of rent for the term. See note in 71 *A. L. R.* 817. In the cases there annotated is one exception, and that relied on by the appellant, *Partch v. Boyle*, 197 Iowa, 1314, 197 N. W. 35, where the court held the covenant to pay the rent for the term to create an existing indebtedness at the time of the insolvency of the lessor. The only other case cited by the appellant with facts similar to the instant case is *Gordon v. Tausig*, 16 Pa. Dist. & Co. R. 539, where the judge applied to such a case the rule of depositor and borrower, and cited *Colton v. Drovers' Perpetual Bldg. & Loan Assn.*, 90 Md. 85, 45 A. 23, as one of his authorities. This court inclines to the principle that a covenant to pay rent for the term does not create a debt until the time stipulated for payment arrives.

*Order affirmed, with costs.*