COSMOPOLITAN TRUST COMPANY *vs.* AL. A. ROSENBUSH & others.

Suffolk. June 24, 1921. — June 30, 1921.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Trust Company,* Savings department. *Bills and Notes. Set-off.*

A trust company, by discounting an unsecured note of a customer payable three and one half months after its date, lent to the customer $25,000. The customer carried with the trust company large sums on deposit. About fifty days before the maturity of the note, the trust company, without the knowledge or consent of or notice to. the customer and without any inducement or other formality, transferred the note to a savings department maintained by it under St. 1908, c. 520, and transferred from the savings department to its commercial department the face value of the note less the discount for the period it still had to run, and three days later with many other notes, including others in its savings department, transferred it to a national bank for a loan without indicating that it belonged to its savings department. Two days thereafter the bank commissioner under St. 1910, c. 399, took possession of the trust company's business and property, the customer then having on deposit in its commercial department $7,901.87. At or shortly after the maturity of the note, the customer paid $17,000 on account

of its face, and further tendered in payment of the balance due $98.13 which, with its deposit in the commercial department, would have constituted full payment if accepted. The tender was refused. The deposits in the savings department had not been paid in full. The loan to the trust company by the national bank later was repaid and the note was returned to the trust company and it brought an action for $8,000 against the customer, who, having paid $98.13 into court in continuance of its tender, sought to set off the $7,901.87 he had on deposit in the commercial department. *Held,* that

(1) After the transfer of the note to the savings department, that department held it as assignee with the same authority and subject to the same obligations to its depositors as it would have held any commercial paper which it had purchased without indorsement from a holder thereof who was not connected in any manner with its commercial department, and the customer was no more entitled to a notice of such transfer than he would have been if the trust company had sold the note to a stranger;

(2) The allowance of a set-off in the circumstances would be contrary to the letter and to the spirit of St. 1908, c. 520, § 2;

(3) This conclusion is not affected by the fact that the note may have been an investment illegal for the savings department.

CONTRACT for $8,000 upon a promissory note made by the defendants and payable to the plaintiff. Writ dated March 5, 1921.

In the Superior Court, the action came on to be heard before *McLaughlin,* J., upon an agreed statement of facts described in the opinion and at the request of the parties and without any decision thereon he reported the case to this court for determination.

The case was submitted on briefs.

*H. O. Cushman & D. L. Smith,* for the plaintiff.

*Lee M. Friedman, P. A. Atherton & P. D. Turner,* for the defendants.

PIERCE, J. This is an action on a promissory note brought by the plaintiff to recover the sum of $8,000 alleged to remain unpaid on the defendant's note for $25,000 held by the plaintiff. The defendant's answer is a general denial, a claim of recoupment and a declaration in set-off. The case is before this court on a report by a justice of the Superior Court without decision upon an agreed statement of facts. From these facts it appears that the defendants, a copartnership, on their unsecured, single name firm note dated July 28, 1920, borrowed of the Cosmopolitan Trust Company the sum of $25,000, which became due and payable at the plaintiff's bank on November 10, 1920. The note was discounted on the day of its date by the trust company in the course of its general banking business. On that day the defendants had and continued to have at all times thereafter large sums of

money on deposit with the trust company in connection with its general banking business. When the note was discounted by the trust company it had and ever since has maintained a savings department, in which deposits were made under the authority of and subject to St. 1908, c. 520, now G. L. c. 172, §§ 60–72. On or about September 20, 1920, without the knowledge or consent of or notice to the defendants, the trust company placed the defendants' note in the investments held by the savings department, without any indorsement thereof or other formality and transferred $25,000, the face value of the note less the legal discount for the period that the note still had to run, from the funds of its savings department to its general funds. The trust company carried the note as a part of the assets of its savings department until September 23, 1920, when it indorsed the note and transferred it with a large amount of other notes, including many notes held in its savings department, to the Irving National Bank as security for a loan from that bank to the trust company. The trust company in no way indicated, in connection with said transfer, that the notes belonged to or were a part of the assets of the savings department. On December 18, 1920, after said loan had been paid in full, and discharged, the note in suit was returned by the bank to the plaintiff trust company and thereafter held by it in its savings department. The committee on investments of the savings department was made up of a committee of the trust company directors. The same vaults were used by the savings department as were used by the plaintiff in its commercial business, and the business of the savings department was conducted by the same officers as conducted its other business, although clerks were specially assigned to the detail work of the savings department. On September 25, 1920, Joseph C. Allen, as commissioner of banks of the Commonwealth of Massachusetts, acting under the authority of St. 1910, c. 399, now G. L. c. 167, § 22, took possession of the property and business of the Cosmopolitan Trust Company and has since retained and still retains the same under the provisions of said statute.

On September 25, 1920, the defendants had on deposit in the commercial department of the trust company $7,901.87. On or soon after November 10, 1920, the date of the maturity of the note, the defendants paid the sum of $17,000 on account of the

note. About the same time the defendants tendered the sum of $98.13 which with the amount of the deposit in the trust company, $7,901.87, made $8,000, the amount then due for the said note. This tender has ever since been maintained and said amount has been paid into court by the defendants, but the plaintiff has refused to accept the same. It is further agreed that " The deposits in said savings department have not been paid in full."

Upon the foregoing facts the question presented is, whether a depositor in a trust company can set off the amount of his deposit in the commercial department against the balance due from the depositor on a note held as an investment in the savings department of the same trust company.

Under the circumstances of this case we do not think the defendants have a right of set-off. St. 1908, c. 520, § 2, now G. L. c. 172, § 61, under which the plaintiff maintains its savings department, provides that all such deposits shall be special deposits and shall be placed in said savings department, and all loans or investments thereof shall be made in accordance with the law governing the investment of deposits in savings banks. Section 3 of St. 1908, c. 520, and § 62 of G. L. c. 172, provide that " Such deposits and the investments or loans thereof shall be appropriated solely to the security and payment of such deposits, and shall not be mingled with the investments of the capital stock or other money or property belonging to or controlled by such corporation, or be liable for the debts or obligations thereof until after the deposits in said savings department have been paid in full." When the trust company transferred the note of the defendants to the savings department and received of the savings department from its deposits the discount value of the note on September 20, 1920, the savings department held the note as assignee with the same authority and subject to the same obligations to its depositors as it would have held any commercial paper which it had purchased without indorsement from a holder thereof who was not connected in any manner with its commercial department, and the defendants were no more entitled to a notice of such transfer than they would have been if the trust company had sold the note to a stranger. As assignee the savings department took the note subject to all equities and defences existing between the commercial department and the defendants. But no claim is made that

the note was not in all respects genuine and free from defences. The note was not due when transferred to the savings department, and so far as appears the defendants then had no claim or demand against the commercial department which was incidental to the note or to any independent contract for breach of which the defendants had a cause of action against the trust company. The defence of set-off or counter claim which is available to a debtor as against an assignee of a creditor must have existed as a present right when the assignment was made, and this is especially true where the right arises out of an independent contract in this case to pay on demand the deposits of the defendants in the trust company bank which were subject to check.

This conclusion is not affected by the fact that the note may have been an investment illegal for the savings department. There is every reason why investments made of funds in the savings departments should be shielded so far as possible from the illegal acts of those charged with the duty of caring for those funds. The plain and paramount purpose of the statute is to protect so far as practicable depositors in the savings departments of trust companies, many of whom may be poor people with small resources, against the risks of commercial banking. The seeming hardship of this result from the point of view of the defendants arises from the statute which permits corporations organized primarily for commercial banking also to transact a savings business. That is a matter of legislative policy with which the courts have nothing to do.

We think the allowance of a set-off would be contrary to the letter and spirit of St. 1908, c. 520, § 2, G. L. c. 172, § 61, above quoted. Indeed the statute makes no provision for set-off against claims of the savings department of trust companies as it does in the case of savings banks. G. L. c. 167, § 35. St. 1878, c. 261, § 1.

This case is governed by *Kelly* v. *Commissioner of Banks, ante,* 298, and for the reasons there stated judgment should be entered for the plaintiff for $8,000 and interest thereon from November 10, 1920; and judgment should be further entered for the defendants in set-off.

*So ordered.*