HOLLIS R. BAILEY & another, receivers, vs. COMMISSIONER
OF BANKS.

Suffolk.   March 9, 1923. — April 13, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, & CROSBY, JJ.

*Trust Company*, In liquidation.   *Bankruptcy*, Preference.   *Bills and Notes.*

The receiver in bankruptcy of a partnership is not entitled to receive from the
commissioner of banks, in possession under G. L. c. 167, § 22, of the property
and business of an insolvent trust company having a savings department,
a dividend made by the partnership while solvent in the com-
mercial department of the trust company, if a demand note, made by the part-
nership while solvent and more than four months before bankruptcy and
secured among other things by "every balance of deposit account which the
makers might at any time have with" the trust company, is held by the savings
department of the trust company and there is due thereon an amount in ex-
cess of the dividend upon the deposit in the commercial department; but the
commissioner may apply such dividend toward payment of the note, and
such application does not effect an unlawful preference under the bankruptcy
act.

BILL IN EQUITY, filed in the Supreme Judicial Court on No-
vember 29, 1922, by the receivers in bankruptcy of a partnership
against the commissioner of banks for the Commonwealth in
possession of the property and business of Tremont Trust Com-
pany seeking payment to the plaintiffs of a dividend declared
by the commissioner upon a deposit made by the partnership in
the commercial department of the trust company.

The suit was heard by *Pierce*, J., upon the bill and answer and
agreed facts, which so far as material are described in the opinion.
Material facts are described in the opinion.

By order of the single justice a final decree was entered dis-
missing the bill; and the plaintiffs appealed.

*H. R. Bailey*, for the plaintiffs.

*H. W. Brown*, for the defendant.

DE COURCY, J.   The commissioner of banks on February 17,
1921, took possession of the property and business of the Tremont
Trust Company under G. L. c. 167, § 22, and has since been
engaged in winding up its affairs.   Among the assets of the sav-

ings department, and held as an investment of deposits therein, was a demand collateral note of Burgess, Lang and Company for $50,000, dated July 2, 1920, payable to the trust company, and secured by a deposit of certain bonds and stocks. In the body of the note was the following: "The undersigned . . . as security for the payment of this and all other direct or contingent liabilities of the undersigned to the company .·. . hereby pledge to the company the following property . . . and all additions thereto and substitutes therefor, and every balance of deposit account which the undersigned may at any time have with the company, and all right, title and interest of the undersigned in or to any property which has or shall come into the possession or custody of the company in any way, or for any purpose whatever, whether the company shall accept it for the purpose for which it is delivered to it or not; . . . the company may, at any time, at its option, apply any or all of the net cash receipts from any said security, or any or all of any balance of deposit account of the undersigned with the company, to the payment in whole or in part of this or any of said other liabilities. . . ."

It appears that the proceeds of said note were deposited to the credit of Burgess, Lang and Company in the commercial department of the trust company, on said July 2, 1920, and thereafter the account was active until the commissioner took possession, on February 17, 1921. On this last date the credit balance due Burgess, Lang and Company was $12,039.64; and the commissioner, on June 7, 1921, issued to them a certificate of proof of claim for that amount, "subject to rights of set-off to be hereafter determined." On June 26, 1922, the commissioner, after being duly authorized by the court, notified depositors in the commercial department that a dividend of sixteen and two thirds per cent was payable on claims which had been proved and allowed. Meanwhile, Burgess, Lang and Company had been petitioned into bankruptcy in March, 1922, and the plaintiffs appointed receivers. The dividend on the deposit in question, amounting to $2,006.60, was not paid to the plaintiffs, but was applied by the commissioner in part payment on said demand note. Other payments on the note, including the proceeds of collateral securities, have amounted to $30,699.60. The total, $32,706.20, leaves due on the note, irrespective of interest,

a balance of $17,293.80. The collateral not yet sold has a value not exceeding $2,000.

The claim of the plaintiffs that it was the duty of the commissioner to apply the full amount of the deposit account, viz, $12,039.64, in part payment of the note held by him for the savings department (assuming that they now have a right to raise this question) cannot prevail. In numerous recent cases, arising out of the liquidation of Massachusetts trust companies, it has been held that the funds and investments of the savings department are held in trust for the depositors in that department; and that the assets thereof cannot be depleted, to the detriment of the savings depositors, by allowing a depositor in the commercial department to set off his deposit against a debt he owes to the savings department. *Bachrach* v. *Commissioner of Banks*, 239 Mass. 272. *Prudential Realty Co.* v. *Commissioner of Banks*, 241 Mass. 277. *Cosmopolitan Trust Co.* v. *Lyons, ante,* 115. Such set-off was not allowed even where the maker of a note had no actual knowledge that the loan made to him was from the funds of the savings department, *Kelly* v. *Commissioner of Banks*, 239 Mass. 298; nor where the note was transferred to the savings department, before maturity, without the knowledge or consent of the maker, *Cosmopolitan Trust Co.* v. *Rosenbush*, 239 Mass. 305. The same is true where the treasurer of the trust company had informed the borrower that he would be allowed to credit the amount of his commercial deposit against the note, *Tremont Trust Co.* v. *Baker*, 243 Mass. 530; and where the borrower had agreed to maintain on deposit in the commercial department a sum equal to approximately twenty per cent of his loans, which was not to be drawn by him, but was to be applied to the payment upon default of his obligations to the savings department. *Tremont Trust Co.* v. *C. H. Graham Furniture Co. ante,* 134.

The rights of the parties to the deposit in question are to be determined as of February 17, 1921, when the commissioner took possession of the trust company. At that time, and for more than a year afterwards, Burgess, Lang and Company were solvent. Under our law, as settled by the above cited cases, they were not entitled to have their deposit in the commercial department applied in payment of the note which they owed to the savings department. The plaintiffs, as receivers in bank-

ruptcy, have no greater rights in this respect. The issuance of the assignable certificate of proof of claim against the commercial department did not affect the commissioner's rights. That certificate reserved his right to use the deposit, or dividends thereon, for the payment of the liabilities of Burgess, Lang and Company. There was no waiver; and no estoppel, as the plaintiffs have not changed position on the faith of the certificate.

Nor are the plaintiffs entitled to receive the dividend of $2,006.60. The commissioner's right to apply the commercial deposit could be exercised only by applying the dividends in liquidation of that deposit. That is all the account is worth to the savings department as security, by reason of the insolvency of the trust company. This result follows not only from the statutory provisions applicable to the liquidation of Massachusetts trust companies, but from the express terms of the collateral note, whereby a lien on this deposit was created in favor of the trust company. It is objected that this amounts to a preference; but the only preference thereby created is that which lawfully results when a secured creditor applies his security. And as stated in the finding of the single justice, the lien or pledge of this fund became certain when the commissioner took possession. "The agreement, then, became operative and binding between the parties more than four months before the petition in bankruptcy." See *National Surety Co.* v. *Commissioner of Banks*, 243 Mass. 218, 221.

*Decree affirmed with costs.*