HARRIS, Appellant, v. ESTERBROOK, Respondent.

(226 N. W. 751.)

(File No. 6532. Opinion filed September 20, 1929.)

*Lewis Benson,* of Flandreau, for Appellant.
*Rice & Rice,* of Flandreau, for Respondent.

MISER, C. On January 13, 1926, respondent Esterbrook executed and delivered to Moody County Bank his negotiable promissory note for $221.50, due April 1, 1926. On January 18, 1926, appellant Harris bought the note from the bank, paying face value and accrued interest therefor, and received the note. It was never indorsed by the bank. On May 22, 1926, the bank was taken over by the superintendent of banks for liquidation. On the day of the transfer respondent had on deposit $7.94. When the bank sus-

pended, respondent had $133.22 on deposit. Respondent claimed the right to set off the $133.22 against the note in the hands of appellant, the bank's transferee. The jury, by its verdict on conflicting testimony, found that respondent's first knowledge of the transfer of the note was on May 31st, nine days after the bank closed, and allowed respondent credit for $133.22. .

This case presents the question: Is a negotiable promissory note, transferred without written indorsement by a payee bank to a transferee in good faith and for value, subject to an offset in favor of the maker for the maker's balance in the bank, when the bank later becomes insolvent? On the day appellant bought the note in suit, the payee bank delivered it to her. Was it subject to a set-off of $7.94 or $133.22, or neither sum? Appellant and respondent rely on different parts of section 2307, R. C. 1919, which is as follows: "In case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of, or before notice of, the assignment; *but this section shall not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before due.*"

Respondent contends that the word "transferred" means "negotiated"; that, by section 1734, R. C. 1919 (section 30, N. I. L.), an instrument payable to order may be negotiated only by indorsement of holder completed by delivery; that, because the payee did not indorse the note, appellant became a mere assignee of a non-negotiable chose in action; and therefore the rights of the parties are to be determined by the first part of section 2307.

Appellant contends that "transferred," as used, is defined by section 517 as follows: "Transfer is an act of the parties, or of the law, by which the title to property is conveyed from one living person to another." With reference to respondent's contention that the word "transferred" means "negotiated," appellant says: "The statute means just what it says. Had a different meaning been intended, different language would have been used. When this law was passed, there was no uncertainty in our state as to the meaning of the word 'transfer.'" In other words, appellant contends that the rule in the first part of section 2307 does not apply and the note is not subject to set-off because her note comes within the exception in the last part of the section.

■ Appellant also contends that, by the transfer, she became a "holder in due course"; but this is contrary to an express provision of the Uniform Negotiable Instruments Law, being section 1753, R. C. 1919, which is as follows: "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferer. But for the purpose of determining whether the transferee *is a holder in due course,* the negotiation takes effect as of the time when the indorsement is actually made." This is section 49, N. I. L., and will hereinafter be referred to as such. But, although appellant is not "a holder in due course," it does not necessarily follow that the note bought and delivered on January 18th is subject to the offset of the amount on deposit on May 22d.

■ It would be a simple matter to accept appellant's contention that section 2307 means just what it says and that "transferred" as therein used is defined by section 517. The problem presented is not so simple, however. Since the first enactment of what are now sections 2307 and 517, supra, neither of which is part of the Negotiable Instruments Law, this state has adopted the Uniform Negotiable Instruments Act. Being a part of this law, which, with some slight variations, has been adopted in each of the 48 states, section 49, N. I. L., our section 1753, has been construed many times by other courts. Because it is part of a uniform state law the object of the adoption of which was to secure not only identity in statute but also uniformity in decision, only decisions applying and interpreting the Uniform Negotiable Instruments Law are entitled to much weight as "precedents." If the meaning of the latter part of section 2307 is doubtful, it must be construed with due regard for the legislative intent to make the law of negotiable instruments uniform.

■ That appellant acquired title to the note by the transfer without indorsement is settled law. 5 Uni. Laws Ann. 198, Brannan's Neg. Ins. Law (4th Ed.) pp. 339, 340. Some courts hold that the transferee in good faith and for value becomes vested with legal title; others hold that the transferee becomes vested with equitable title. 1 Joyce's Def. Com. Paper (2d Ed.) p. 923, § 663. The statute itself says that "the transfer vests in the transferee

such title as the transferor had therein." In Piper v. Hagen, 33 S. D. 491, 146 N. W. 692, 694, this court said: "The delivery of the note by Mrs. Wade [the payee] to the respondent for a valuable consideration and with the intent to pass the title to the note to him was sufficient to transfer the title, even though it had not been indorsed at all."

It is also well established that such a transferee, whether his title be legal or equitable, takes title subject to equities and defenses. The apparent unanimity on this point is as marked as the lack of unanimity as to the time when such equities and defenses may accrue. See Martz v. Nat. Bank (1911) 147 App. Div. 250, 131 N. Y. S. 1045; 1 Joyce's Def. Com. Paper (2d Ed.) p. 923; § 663; note 5 U. L. A. 198; Steinhilper v. Basnight, 153 N. C. 293, 69 S. E. 220. The rule that a transferee, without indorsement, though in good faith and for value, takes subject to equities and defenses, remains the rule. However, that rule is not decisive of this case, for many well-considered cases hold that set-offs, such as here under consideration, are not equities or defenses within that rule. In Harrisburg Trust Co. v. Shufeldt, 31 C. C. A. 190, 87 F. 669, 671, it was said: "The fact that it is transferred without indorsement is sufficient to put the transferee upon inquiry as to all equitable defenses that existed at the time of the transfer. But a set-off is not a 'defense,' as that term is ordinarily used (Chandler v. Drew, 6. N. H. 469 [26 Am. Dec. 704]; Wat. Set-Off, §§ 5, 6), and is never pleadable as a defense unless it is expressly made so by statute. 'The rule that a party taking an overdue bill or note takes it subject to the equities to which the transferer is subject does not extend so far as to admit set-offs which might be available against the transferer. A set-off is not an equity, and the general rule stated is qualified and restricted to those equities arising out of the bill or note transaction itself, and the transferee is not subject to a set-off which would be good against the transferer arising out of collateral matter.' 2 Daniel, Neg. Inst. 1435a; Chit. Bills (13th Am. Ed.) 251. The set-off in this case is not connected with the note, or with the consideration for the note, or the circumstances under which it was given. It is not a defense to the note or to liability thereunder. It is a separate and independent cause of action, existing in favor of the defendant, which, by virtue of the statute only, is permitted to be

set off against the plaintiff's debt for the purpose of adjusting mutual demands and avoiding unnecessary litigation."

In Orr v. Barnett, 51 S. D. 607, 216 N.W. 347, 349, this court said: "A right of set-off is not an infirmity in the instrument. A set-off is not a defense to the note. It is merely a right to establish another claim and apply it in payment of the valid note. Harrisburg Trust Co. v. Shufeldt, 31 C. C. A. 190, 87 F. 669."

In both these cases, the claim of set-off was based upon a balance in a bank. In the federal case, the note was transferred without indorsement. In Worden v. Gillett (D. C.) 275 F. 654, 656, referring to a section of the Florida statute identical with our section 1762, the court said: "Section 4731, above referred to, subjects negotiable paper in the hands of a holder, other than in due course, to the same defenses as nonnegotiable paper. This does not enlarge the scope of the statute of set-off, which is not a defense."

In Cosmopolitan Trust Co. v. Rosenbush, 239 Mass. 305, 131 N. E. 858, 860, 16 A. L. R. 1484, the set-off claimed was a deposit balance in the commercial department of the trust company to which the note was made payable. The note was transferred without indorsement to the savings department. The court said:

"As assignee the savings department took the note subject to all equities and defenses existing between the commercial department and the defendants. But no claim is made that the note was not in all respects genuine and free from defenses. The note was not due when transferred to the savings department, and so far as appears the defendants then had no claim or demand against the commercial department which was incidental to the note or to any independent contract for breach of which the defendants had a cause of action against the trust company.

"The defense of set-off or counterclaim which is available to a debtor as against an assignee of a creditor must have existed as a present right when the assignment was made."

To the same effect, see Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 143 N. E. 827. See, also, Brannan (4th Ed.) p. 498, and 8 C. J. 804.

■ Therefore, whatever may be the rule as to other defenses and equities, it may be fairly stated that the set-off that may be interposed against a negotiable promissory note transferred, without

indorsement, in good faith, and for value, must be a set-off which existed as a present right when the transfer was made. This is in accord with the very language of section 49, N. I. L., our section 1753, that, "The transfer vests in the transferee such title as the transferer had therein."

On the day when appellant bought, paid for, and received the note, the maker thereof had on deposit with the payee bank only $7.94. The following day, his balance was 29 cents, and the next entry on the account shows a small overdraft. It is not necessary, therefore, to decide whether the $7.94 was a valid set-off between appellant and respondent; because the deposit balance on the day of transfer was entirely withdrawn. It is true that, on the day of the maturity of the note, respondent had on deposit more than sufficient to pay the note; but he did not use it for that purpose. The matter then resolves itself to this: Respondent had no equity or defense to which his note was subject at the time of the transfer on January 18th. His right of set-off, if any he had, to the $7.94 then on deposit, was lost when he withdrew that balance. Respondent points to the fact that the note was not indorsed; but appellant inquires: What difference did it make to respondent in this case that the note was not indorsed? It was bought and paid for by appellant, who had title thereto. As to whether "transferred" in section 2307, means "negotiated" or means "title to which is conveyed," we do not decide. There is, however, nothing in section 2307 either in its language or spirit, which prevents the result herein reached. The judgment and order appealed from must be, and are, reversed.

MISER, C., sitting in lieu of BROWN, J.

CAMPBELL and BURCH, JJ., concur.

SHERWOOD, P. J., and POLLEY, J., concur in the reversal of the judgment appealed from.