ROSSI BROS. INC. *vs.* COMMISSIONER OF BANKS.

Suffolk.   November 15, 1932. — May 24, 1933.

Present: RUGG, C.J., CROSBY, FIELD, & LUMMUS, JJ.

*Trust Company,* Liquidation: set-off.   *Set-off.   Bank and Banking. Contract,* What constitutes, Consideration.

A depositor in the commercial department of a trust company in the possession of the commissioner of banks under G. L. (Ter. Ed.) c. 167, §§ 22–36, is entitled to set off the amount of his deposit both against the amount of a note to the bank of which he was the maker and which

fell due on the day on which the commissioner took possession and also against the amount of such a note which fell due after the commissioner took possession, although there were indorsers upon the notes and the notes had been duly protested.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on January 27, 1932, and described in the opinion.

The suit was referred to a master. Beside the material facts found by him and stated in the opinion, the master reached the following conclusions:

"If, as a matter of law, the amount of $2,064.28 standing in the name of the plaintiff on the books of the Highland Trust Company should be set off against the sums of money which the plaintiff owes to the defendant, then I find that the note of October 13, 1931, is paid in full; that on the note of November 6, 1931, there is a balance due the defendant of $126.77, with interest from November 6, 1931; there is also due the defendant, the sum of $1,174 with interest from December 1, 1931, and the sum of $1,173 [*sic*] with interest from December 11, 1931.

"If on the other hand, the plaintiff, as a matter of law, is not entitled to the set off of $2,064.13, then I find there is due the defendant the sum of $1,174.13 with interest from October 13, 1931; $1,016.92 with interest from November 6, 1931; $1,174 with interest from December 1, 1931; and $1,173 [*sic*] with interest from December 11, 1931."

After hearing by *Pierce*, J., there was entered a final decree adjudging that $1,174.13 of the amount standing in the name of the plaintiff on the books of the trust company be applied in payment of the note that became due on October 13, 1931, in the sum of $1,174.13; and that the plaintiff owed the entire amount of the other three notes with interest.

Both parties appealed.

*F. G. Moulton*, for the defendant.

*G. Gruzen*, for the plaintiff.

RUGG, C.J.   The plaintiff seeks to have the defendant instructed to apply certain deposits to its credit in the Highland Trust Company, of which the defendant is in

possession under G. L. (Ter. Ed.) c. 167, §§ 22–36, for purposes of liquidation, to the payment in part of promissory notes held by the defendant, signed by the plaintiff as maker, and indorsed by two other persons. The defendant seeks by way of affirmative relief that the indebtedness of the plaintiff to the bank be determined and that the plaintiff be ordered to pay the same.

When the defendant took possession of the bank on October 13, 1931, the plaintiff owed the bank $4,438.05 as maker of four promissory notes, all bearing the indorsements of two other persons, and had on deposit to its credit in the bank $2,064.28. The controversy is whether the plaintiff is entitled to have the whole or any part of its deposit set off against the amount due from it on the notes. It was agreed in open court at the argument that the Highland Trust Company is insolvent and that the notes of the plaintiff are held in its commercial department.

The relevant facts are that the plaintiff in 1930 opened an account with the bank upon the understanding that a certain line of credit be extended to it. Divers sums of money were borrowed by the plaintiff of the bank on comparatively short term notes, all of them bearing two indorsements. At first, the treasurer of the plaintiff came in person to the bank on each due date with its check drawn on its account in the bank and paid the note. Later, it was suggested by the treasurer of the bank that as matter of convenience the account of the plaintiff might be charged with the amounts of the various notes as they became due and the notes returned to the plaintiff with its statement on the first of each month following. This suggestion was accepted and the plaintiff agreed that it might be done. Thereafter, numerous notes of the plaintiff were paid in that way. The physical act of thus charging the account of the plaintiff was performed by a note teller of the bank whenever he had time, generally in the forenoon of the respective due dates. On October 13, 1931, a note of the plaintiff for $1,174.13 became due and payable at the bank. On that day, by reason of apprehension that the bank commissioner might take possession of the bank, there was

uneasiness and commotion among officers and employees of the bank, and the note teller did not charge the note of the plaintiff against its account before 1:22 o'clock in the afternoon, at which time the defendant took possession of the bank. The deposit to the credit of the plaintiff at that time was $2,064.28. The defendant did not charge the note against the account but caused the note to be protested for nonpayment and gave notice to the indorsers. On November 6, December 1 and December 11, 1931, other notes of the plaintiff bearing the same indorsements fell due, which were not charged against its account but were protested for nonpayment on their respective due dates and notices sent to the indorsers. The defendant has made no agreement that the deposit of the plaintiff might be credited on the notes.

It is plain that there was no contract between the plaintiff and the bank whereby the latter was required to charge the account of the plaintiff with the amount of each of its notes as it became due. The arrangement made was simply one of convenience to accommodate the plaintiff. The plaintiff gave nothing to the bank. The plaintiff did not even agree to maintain a deposit in the bank. The bank received no consideration. It already had the legal right to charge the account of the plaintiff with the amount of each note as it became due. *Laighton* v. *Brookline Trust Co.* 225 Mass. 458, 459–460. No assent of the depositor to this course was required. The bank suffered no impairment of its legal rights by reason of the arrangement. *Tremont Trust Co.* v. *Baker,* 243 Mass. 530. *Tremont Trust Co.* v. *C. H. Graham Furniture Co.* 244 Mass. 134. The circumstance that commonly the note teller had made the charge during the forenoon of each due date of a note and failed to do so with respect to the note falling due on October 13, 1931, when the defendant took possession of the bank, gives the plaintiff no additional rights. It does not appear that the plaintiff knew during what part of the due date the amount of the note had been charged to its account. It was done whenever convenient to the note teller. The bank in any event had all of the banking day in which to

make the charge. There was no obligation that it be done before 1:22 in the afternoon, when the defendant took possession of the bank. The indorsers had all of that day in which to discharge their liability on the notes, if they so desired. The rights of the parties with respect to the note falling due on October 13, 1931, stand on the same footing as those with respect to the notes falling due on subsequent dates.

The precise situation is that the defendant holds notes of which the plaintiff is maker and that the plaintiff has a debt due to it as depositor in the bank. The question is whether the deposit can be set off against the notes. This question has never arisen for adjudication with respect to banks in the hands of the commissioner for liquidation under the present statute. Cases where the note was held by the savings department of a trust company in process of liquidation and it was sought to set off against that obligation a credit in the commercial or in the savings department are not controlling. Those decisions denied any right of set-off because of the special statutory guards thrown about deposits in such savings departments and the investments in which such deposits are made. *Bachrach* v. *Commissioner of Banks,* 239 Mass. 272. *Kelly* v. *Commissioner of Banks,* 239 Mass. 298. *Cosmopolitan Trust Co.* v. *Rosenbush,* 239 Mass. 305. *Tremont Trust Co.* v. *Baker,* 243 Mass. 530. *Tremont Trust Co.* v. *C. H. Graham Furniture Co.* 244 Mass. 134. *Bailey* v. *Commissioner of Banks,* 244 Mass. 499. *Bieringer-Hanauer Co.* v. *Cosmopolitan Trust Co.* 247 Mass. 73. *Cosmopolitan Trust Co.* v. *Suffolk Knitting Mills,* 247 Mass. 530, 537. The savings department is not involved in the case at bar.

Cases like *Cosmopolitan Trust Co.* v. *S. Vorenberg Co.* 245 Mass. 317; *Cosmopolitan Trust Co.* v. *Lyons,* 244 Mass. 115; *Cosmopolitan Trust Co.* v. *Wasserman,* 251 Mass. 514; *Cosmopolitan Trust Co.* v. *Golub,* 252 Mass. 574; *Commissioner of Banks* v. *Abramson,* 245 Mass. 321, and *Bates* v. *Cosmopolitan Trust Co.* 240 Mass. 162, all related to facts where, in the main, persons not primarily liable, or not liable at all, attempted in vain to secure a set-off of an

individual deposit in the commercial department of a bank in liquidation against the liability of one primarily liable on a note.   They are distinguishable.

The general principle was stated in *Bachrach* v. *Commissioner of Banks*, 239 Mass. 272, 273, in these words: "In ordinary commercial banks the legal relation between the bank and a general depositor is that of debtor and creditor; and where the depositor owes the bank he may set off his deposit against the indebtedness, even though the bank has become insolvent."   This principle prevails in the Federal courts and widely in other jurisdictions.   *Scott* v. *Armstrong*, 146 U. S. 499.   *Bank of United States* v. *Braveman*, 259 N. Y. 65.   *Bromfield* v. *Trinidad National Investment Co.* 36 Fed. Rep. (2d) 646, 648.   See note, 25 Am. L. R. 938, where many cases are collected.   If the defendant had not taken possession of the bank and it were doing business and brought an action on its notes against the plaintiff, the latter plainly would be entitled to set off its deposit in the bank against its indebtedness to the bank.   G. L. c. 232, § 1.   It is a maxim that equity follows the law as declared by a statute.   This applies to set-off.   Equity may in some cases even extend the doctrine.   *Abbott* v. *Foote*, 146 Mass. 333, 334.   The provisions of the liquidating statute, G. L. (Ter. Ed.) c. 167, §§ 22 and 36, contain nothing inconsistent with the application of the rule as to set-off to a case like the present.   The purpose of that act is that the commissioner of banks shall gather all the assets of the bank and convert them into cash as soon as may be and, after deducting expenses, make an equal distribution of the net proceeds in dividends of equal proportion among creditors of the same class who have established their claims. "The fundamental principle is equality of treatment among all creditors of the same grade or class."   *Cosmopolitan Trust Co.* v. *Suffolk Knitting Mills*, 247 Mass. 530, 537. That principle does not require that general rules for the adjustment of mutual claims between a bank and its debtors be set aside.

Set-off is applicable to the present cause even though the defendant holds notes of which the plaintiff is the maker

and on which there are two other indorsers. The rights of the holder of the notes against the indorsers have been fixed by demand and protest. Although three persons are liable to the defendant on each note, the plaintiff as the maker is primarily and absolutely liable on them. G. L. (Ter. Ed.) c. 107, §§ 19, 83. *Union Trust Co.* v. *McGinty*, 212 Mass. 205, 207. The indorsers are secondarily liable on the notes. G. L. (Ter. Ed.) c. 107, §§ 19, 86. *Maglione* v. *Penta*, 266 Mass. 413, 416. The indorsers are not parties to the present suit. The defendant, by seeking affirmative relief to have the indebtedness of the plaintiff determined and ordered paid, is in substance and effect prosecuting an action against the plaintiff as maker of the notes. If it be assumed that the rights of the parties in a proceeding like the present ought not to be defeated by the form of action, the result would be the same. If the defendant had so desired, he might have brought a single action against the maker and the indorsers, joining them all as defendants. G. L. (Ter. Ed.) c. 231, § 4. But the maker and indorsers are not jointly liable on the several notes. G. L. (Ter. Ed.) c. 107, §§ 86, 87. *Savage* v. *Welch*, 246 Mass. 170, 181. Several counts, several judgments, and several executions, if justice requires, may ensue in such an action. G. L. (Ter. Ed.) c. 231, § 4. The right of set-off ·in such an action would not then be defeated by the terms of G. L. (Ter. Ed.) c. 232, § 3, to the effect that "If there are several plaintiffs or defendants, the claim set off shall be due from all of the plaintiffs jointly and to all of the defendants jointly. . . ." That section would not be applicable because, although joined under the statute as defendants in one action, the maker and indorsers would not be jointly liable but their several responsibilities would be preserved and their several rights of defence would be preserved.

The case at bar is not governed by *Prudential Realty Co.* v. *Commissioner of Banks*, 241 Mass. 277. In that case the note of the debtor held by the bank was secured by mortgage of real estate. It was held that the implied understanding of the parties was that "the mortgage became security for a particular debt" and, applying a

principle of law applicable to such mortgage debts, that "the general accounts between the parties were entirely outside that transaction and could neither increase nor diminish the amount of the debt secured." Page 278. *Mayhew* v. *Martha's Vineyard National Bank*, 203 Mass. 511, 515.

This conclusion follows the statement already quoted from *Bachrach* v. *Commissioner of Banks*, 239 Mass. 272 at page 273. It is in conformity to the rule prevalent in other jurisdictions. It does not shake the force of any decision hitherto rendered interpreting the statute in question. It deals with facts not before presented for our decision.

The result is that the final decree must be reversed and a new final decree be entered in conformity to the principles here declared, and without costs.

*Ordered accordingly.*