LEE M. FRIEDMAN & others *vs.* COMMISSIONER OF BANKS.

Suffolk.     January 17, 18, 1935. — May 20, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Set-off.    Trust Company,* Liquidation proceedings.

A debtor whose creditor is indebted to him is not entitled to set off the debts by virtue of G. L. (Ter. Ed.) c. 232, § 1, if his creditor has not brought an action against him.

Where, after a trust company which was a creditor of a corporation in financial difficulties had assigned its claim to a creditors' committee for enforcement and distribution of the proceeds to the trust company, the commissioner of banks took possession of the trust company at a time when it was indebted to the committee for the amount of a deposit which the committee had with it, and subsequently it appeared that the committee had funds enabling them to make a payment to the trust company on its assigned claim, but at the time when the commissioner took possession of it the situation was that there was nothing due to it from the committee and whether anything ever would become due rested solely on a contingency, not that there was an indebtedness of the committee to the trust company which was merely unmatured or unliquidated, the committee were not entitled to set off the amount of their deposit in the trust company against the amount in their hands available for payment to it.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on August 15, 1934.

The suit was heard by *Field,* J. Material facts are stated in the opinion. By order of the single justice, a decree dismissing the bill was entered. The plaintiffs appealed.

The case was argued at the bar in January, 1935, before *Rugg,* C.J., *Crosby, Lummus,* & *Qua,* JJ., and afterwards was submitted on briefs to all the Justices except *Field,* J.

*Lee M. Friedman,* (*C. W. Spencer* with him,) for the plaintiffs.

*E. S. Abbott,* for the defendant.

CROSBY, J. This is a suit in equity filed in this court August 15, 1934, to empower and direct the commissioner of banks, in possession and control of the Exchange Trust Company, to allow a set-off of money on deposit to the plaintiffs' account against a sum due from the plaintiffs to the Exchange Trust Company, of which sum the plaintiffs desire to make payment in this manner. Certain facts were agreed before and at the hearing of the case, whereupon a final decree was ordered by a single justice dismissing the bill. From this decree the plaintiffs appealed.

It appears from the agreed facts that the Crowell & Thurlow Steamship Company in the year 1923 was in financial difficulties, and that about October of that year the plaintiffs were constituted a creditors' committee to deal with the affairs of the company in the interest of some of its creditors, under and in accordance with a certain agreement; that by this agreement various creditors assigned their claims to the committee to be enforced and the proceeds thereof to be distributed ratably to these creditors; that the Exchange Trust Company at this time was a creditor of the steamship company in the sum of $153,709.21, and about December 6, 1923, made an assignment to the creditors' committee of its claim and account; and that the committee had a checking account for its funds in the Exchange Trust Company, and at the time it was closed, April 25, 1932, had on deposit $3,549.13. It is alleged in the bill of complaint that thereafter the committee made proof of its claim and now is the holder of a certificate entitling it to all

dividends on the account. It is further agreed that in the receivership proceedings of the steamship company a dividend of twenty-five per cent was paid and distributed to all creditors whose claims were proved; that the creditors' committee proved a claim as assignee of the Exchange Trust Company and other creditors and collected its twenty-five per cent as dividends; that in addition the committee made a profit by the purchase and sale of certain vessels belonging to the steamship company which enabled it after collecting the twenty-five per cent to pay thirty-five per cent to all creditors whose claims it had acquired by the assignments; and that this thirty-five per cent has been paid to the creditors including the Exchange Trust Company. The bill also alleges that after payment of the expenses of the committee it now has in its possession sufficient funds to enable an additional distribution to the creditors whose claims were assigned to it of two per cent, bringing the total aggregate distribution to thirty-seven per cent. However, to enable the committee to make this final distribution it is necessary for it to make use of $3,074.18 of its deposit with the Exchange Trust Company. The committee therefore desires to pay the trust company the amount to which it is entitled in the distribution by using that much of the deposit as a set-off. For this purpose it has tendered to the defendant, in possession of the trust company, the certificate of proof of claim, but the commissioner has refused to allow such a set-off. At the time the commissioner took possession there was a case pending in this court involving the steamship company, and until after the decision of that case it was impossible for the creditors' committee to ascertain the amount of the dividend that it could pay to the creditors.

There is no allegation in the bill as to any definite amount to distribute on the date the bank was closed. The plaintiffs contend they are entitled to relief on two grounds: (1) by virtue of G. L. (Ter. Ed.) c. 232, § 1; and (2) on general principles of equitable set-off. It does not appear that there is any basis for set-off by virtue of the statute since there never has been any action commenced against

the plaintiffs as the statute contemplates. The plaintiffs are not seeking to avail themselves of a set-off in an action brought against them, but are commencing a suit to settle the accounts between themselves and the defendant.

The case of *Rossi Bros. Inc.* v. *Commissioner of Banks*, 283 Mass. 114, 119, in which relief was given to the plaintiff, does not support the present plaintiffs' contention. The only occasion for referring to the statutory set-off in that case was to illustrate the difference between that case and a case where the plaintiff "would be entitled to set off its deposit in the bank against its indebtedness to the bank," if the commissioner "had not taken possession of the bank and it were doing business and brought an action on its notes against the plaintiff." The relief given in that case was based, not on statutory set-off, but on general principles of equitable set-off, the cases of *Abbott* v. *Foote*, 146 Mass. 333, and *Scott* v. *Armstrong*, 146 U. S. 499, being cited in the opinion. In *Rossi Bros. Inc.* v. *Commissioner of Banks*, 283 Mass. 114, 119, it was said: "It is a maxim that equity follows the law as declared by a statute. This applies to set-off. Equity may in some cases even extend the doctrine. *Abbott* v. *Foote*, 146 Mass. 333, 334. The provisions of the liquidating statute, G. L. (Ter. Ed.) c. 167, §§ 22 and 36, contain nothing inconsistent with the application of the rule as to set-off to a case like the present." The question in the case at bar is whether the principles of set-off entitle the plaintiffs to the relief which they seek. It was said in *Holbrook* v. *Bliss*, 9 Allen, 69, at page 77: "The power of a court of chancery to allow a set-off is derived from the civil law, founded on principles of natural equity, and neither created nor limited by statute, although it follows every statute extension of the right of set-off at law." See also *Perry* v. *Pye*, 215 Mass. 403, 413.

In the ordinary case of set-off by a depositor against an insolvent bank there is no preference created thereby. See authorities cited in *Rossi Bros. Inc.* v. *Commissioner of Banks*, 283 Mass. 114; also 25 Am. L. R. 938 and 82 Am. L. R. 665, for cases there collected. The right of a depositor to set off a claim for his deposit against his indebtedness to

an insolvent bank is well settled. *Bachrach* v. *Commissioner of Banks*, 239 Mass. 272, 273. Michie, Banks & Banking, vol. 5, page 292, § 155, note 60. In the present case there is insolvency on the part of the bank only. The Exchange Trust Company is the only insolvent here involved. The steamship company is not involved, and the creditors' committee in no way represents that company. The committee is not insolvent. Therefore the cases cited in the plaintiffs' brief on pages 4 and 5 which relate to set-off of insolvent parties on both sides have no special bearing upon the case at bar. The rights and obligations of the committee are wholly different from those of a receiver, a trustee or liquidating agent of an insolvent bank or trust company. The plaintiffs in their brief agree that the date when the commissioner took possession of the trust company is the equivalent of the statutory "commencement of the action" for purposes of set-off. In an action at law the rights of a defendant under the statute are to be determined as if the writ had been dated as of the date when the commissioner of banks took and retained possession for the purpose of liquidation. *Cosmopolitan Trust Co.* v. *Wasserman*, 251 Mass. 514, 515. *Bailey* v. *Commissioner of Banks*, 244 Mass. 499, 501. The case of *Cosmopolitan Trust Co.* v. *Wasserman*, 251 Mass. 514, is not pertinent to the facts here presented. In that case Wasserman was a trustee for a third party, not in his individual capacity. The obligations were not mutual, as Wasserman individually and himself as trustee were different parties. In the present case the committee has only one capacity, namely, as representative or trustee of the steamship company's creditors; it has no other capacity in these transactions; it is the same party in both claims. As a general rule rights of set-off in equity are governed by the facts existing at the time of the insolvency of the bank, and not by conditions thereafter created. See 71 Am. L. R. 804, 806, 807, for cases collected. Moreover the plaintiffs concede that the set-off must be considered as of the date the Exchange Trust Company was closed. The bill was rightly dismissed in so far as it sought a set-off of the deposit, since the plaintiffs have not shown that on the

date when the bank closed they were under obligation to pay any particular sum to the bank. This is not merely a case where there is an absolute obligation of the party asserting a set-off not yet matured. The case at bar is dissimilar to cases where the bank holds notes not matured. See 43 Am. L. R. 1325; 51 Am. L. R. 1477, for cases collected. Equity will allow a set-off if the claim of the party asserting it has matured, and it is immaterial that the claim of an insolvent against the party asserting set-off has not yet matured. See *Rossi Bros. Inc.* v. *Commissioner of Banks*, 283 Mass. 114, at page 118, in which the notes held by the insolvent bank fell due subsequently to the closing of the bank, but the deposit was due upon which set-off was allowed. See *Spaulding* v. *Backus*, 122 Mass. 553, 556; Michie, Banks & Banking, vol. 5, pages 294–295, § 156, notes 79, 81, and cases in 1934 supplement, also page 302, § 157 d.

The question here is not whether on the date of the closing of the bank there was a claim that was merely not liquidated, or that could not be ascertained by calculation, but whether there was any claim at all owing to the bank by the committee. The obligation of the committee to the bank was founded on the contract under which the committee took the assignments and agreed to distribute the net proceeds from the assigned claims. On the date the bank commissioner took possession of the Exchange Trust Company there was nothing due from the committee so far as the allegations and proofs are concerned (apart from a distributive share of the $3,549.13). It does not appear that the committee had other funds to be distributed. No proof is made that any particular amount was owing on the date the bank was closed. The answer to the plaintiffs' contention is not that the amount of the committee's obligation to the bank was unliquidated on the date of closing, but that there was nothing due, and that it rested solely on a contingency whether anything would become due. Upon the agreed facts it was impossible for the creditors' committee to ascertain what dividend if any would ultimately be paid. The plaintiffs argue that since the fractional shares

which the creditors had in the fund was ascertained, the defendant's claim was not on that date one that may not be "ascertained by calculation"; that "It only remained to determine whether a smaller or greater sum was to be so divided." The fund in the hands of the committee was uncertain and dependent upon conditions which could not be forecast at the time of the closing of the bank. Its amount could not then be ascertained by calculation. The amount found to be finally due would constitute a claim which cannot be said to relate back to an earlier time because of the continuing existence of the contract prescribing the *pro rata* share of the fund to which the Exchange Trust Company would become entitled. It is a condition arising after the insolvency and cannot be considered to the detriment of the other creditors of the insolvent trust company. It is plain that a bank deposit cannot be set off against an indebtedness arising after the closing of the bank — for example, rent not accrued — even though a covenant to pay antedates the suspension. *Real Estate Board* v. *Page*, 164 Md. 500. Michie, Banks & Banking, vol. 5, page 294, § 156. See 71 Am. L. R. 804, 817, for cases collected. A contingent liability cannot be set off, for the rule of set-off between a closed bank and its depositor applies only to concurrent liability on the date of insolvency. *Stokes* v. *Home Life Ins. Co.* 187 Ark. 972. Since no debt due from the creditors' committee to the bank on the date of closing has been shown, set-off was rightly denied.

It follows that the final decree dismissing the bill must be affirmed, with costs.

*Ordered accordingly.*