232 P.2d 684

**TURKENKOPH et ux. v. TE BEEST et al.**

No. 5376.

Supreme Court of New Mexico.

June 14, 1951.

George L. Zimmerman, Carrizozo, for appellants.

Allan D. Walker, Alamogordo, for appellees Vernon H. Ove and Helen Ove.

COORS, Justice.

The material facts in the case were established by substantial evidence and are undisputed. All of them (except a few hereinafter specifically mentioned) were contained in the trial court's findings of fact. We therefore deem it wholly unnecessary here to state all the evidence or facts, but only those few which are pertinent to the question of law to be decided.

The only question of law necessary to a decision is this: In an action brought by the last assignee and holder of a negotiable promissory note transferred to him by an assignor in good faith and upon valuable consideration but after maturity, can the maker of the note who is sued establish a set-off or counterclaim, whether matured or not, if mature when pleaded, which set-off or counterclaim existed in favor of the maker against the assignor of the party suing, before notice to the maker of the assignment? If the answer to this question is no, then the maker is not entitled to plead such a set-off and the judgment of the trial court was correct. If the answer is yes, then the maker is entitled to plead, claim and obtain such a set-off and the judgment of the trial court is clearly erroneous and should be reversed and set aside.

Plaintiffs and Cross-Defendants Turkenkoph, on September 18, 1948, executed and delivered to Morgan their promissory note for $3,025.00 secured by a real estate mortgage and also a chattel mortgage. On July 14, 1949, after maturity of said note, defendant Te Beest secured a transfer and assignment of said note and mortgages from Morgan to himself by paying the total amount of the principal and interest to Morgan, the larger part of which Te Beest had gotten from an advancement of money made by Defendant and Cross-Complainant Vernon H. Ove. Defendant Te Beest held the note and mortgages until October 7, 1949, at which time he transferred and assigned them to Defendant and Cross-Complainant Vernon Ove. This assignment was of course after maturity of the note. Between June 6, 1949 and September 2, 1949, Te Beest became liable and indebted to Cross-Defendants Turkenkoph on collateral matters in the sums of $1,500.00

and $3,400.00, or $4,900.00 for the two items, and all of this was justly due and owing to·Plaintiff and Cross-Defendants Turkenkoph from Defendant Te Beest on September 2, 1949, and thereafter. The trial court correctly found these two items of $1,500.00 and·$3,400.00 were owing by Te Beest, and that on account thereof, if the note was in the.hands of Defendant Te Beest, the ·Cross-Defendants Turkenkoph would have a valid defense to the payment of said note, that Te Beest is the assignor of said note after maturity and that said counterclaim, set-off and defense of $1,500.-00 and $3,400.00 existed in favor of Plaintiffs and Cross-Defendants Turkenkoph prior to the assignment and prior to any notice of assignment of said note, and that Te Beest was not a holder in due course but took the note after maturity. The trial judge in various and numerous ·findings of fact and conclusions of law may have inferentially found that in addition to the $1,500.00 and $3,400.00 items above mentioned, the Defendant Te Beest also justly owed Cross-Defendants Turkenkoph $5,000.00 which was the amount of the consideration Defendant Te Beest agreed to pay Cross-Defendants Turkenkoph in the oral contract made about June 6, 1949 for a partnership interest in the Ruidoso Bottling Company business, which consideration Te Beest has wholly failed and refused to pay, and which was justly owing by him to Turkenkoph on and since June 9, 1949;

and that this also constituted a counterclaim or ·set-off in favor of plaintiff against Te Beest if the note was or had been sued upon. by Te Beest. These facts were clearly· proved by all the evidence, were undisputed. and should have been specifically included in the findings of fact and ·conclusions· of the trial court.

The trial judge recognized the right of⁻ set-off against Te Beest, the assignor of Ove, providing Te Beest had brought the action, but refused to allow such set-off⁻ against Ove who was Te Beest's assignee· after maturity and who was not a holder in due course.

 Was this ruling by the trial court· so wrong that a reversal is necessary?· It is argued that there is great division of authority on the question of allowing set-· off and counterclaim and that the courts. are in almost hopeless' discord in reaching· decisions determining when set-offs ˙ and counterclaims will be allowed in connection: with negotiable instruments. This discord. may ˙seem to exist by a casual examination: of authorities, but when the authorities and˙ decisions are thoroughly studied it will be· discovered that while the courts in various: states may reach different conclusions, the· statutes on set-off and counterclaim in the· various states the courts are called upon ˙to· construe differ greatly in the way, the manner, the extent and scope in which set-off or counterclaim may be available or used,

and the circumstance and conditions under which it may be available and by what parties it may or may not be pleaded. Set-off and counterclaim were unknown to the common law and owe their existence entirely to statutory law. The occasion for set-off arises when one who is sued may have no defense to the exact cause of action sued upon, but he may have a cause of action against the person suing him, and he asks the court to allow him in the same action to set up his cause against the party suing him so as to try to balance his cause against the suit filed against him, and so that the court hearing the suit containing the cause and the counter-cause may determine what is the liability of each and set off one liability against the other and give judgment to the party found to have the largest claim for the difference or balance between the two claims adjudicated.

The statutes on set-off and counterclaim may be rather generally divided into four classes or types. The first type consists of the earlier statutes which were very restricted in their application. They authorized set-off and counterclaim only in favor of the defendant against the plaintiff, first when the counterclaim arose out of the contract or transaction set forth in the complaint or connected with the subject of plaintiff's action and, second, when plaintiff's action arose on contract and defendant's arose on contract and existed at the time plaintiff's suit was commenced. Some states amended their set-off statutes and enlarged their application and scope. Consequently a second type of statute broadened the right to set-off and allowed the set-off to be pleaded by the defendant against the plaintiff even though defendant's cause of action in the nature of set-off did not arise out of the contract or transaction set forth in the complaint, or when the plaintiff's cause did not arise on contract nor the defendant's set-off arose on contract. It allowed a claim of set-off even though it was based on and arose out of collateral or different independent transactions. A third type of statute is that which greatly enlarged the rights to set-off by allowing the person sued to not only invoke a claim he has against the party suing him, but if the party is suing on a chose in action assigned to him, the party sued is allowed to plead a claim he had against the assignor even as a set-off against the assignee. This type of statute usually provided it did not apply to negotiable instruments. Then there is the fourth type of statute which is the more modern and most liberal in extending the right and use of set-off and counterclaim. This type of statute has been adopted by a number of states but not by many other states. This fourth type of statute is the same as the third type but it also applies to negotiable instruments excepting "to negotiable instruments transferred in good faith and upon valuable consideration before maturity". That is, it applies to all

persons holding and suing on an assigned chose in action excepting a holder in due course of a negotiable instrument and under this fourth type of statute the assignee-holder after maturity is chargeable with any set-off his assignor was liable for while the assignor held the chose in action and before notice of his assignment.

The law in New Mexico relating to counterclaim and set-off pertinent to this case we find in Section 19–412, New Mexico Statutes Annotated 1941 and in Rule 13 of Civil Procedure for District Courts, Section 19–101–(13) New Mexico Statutes Annotated 1941. While such Rule 13 was adopted long after Section 19–412 of the Statutes, such rule in no way expressly or by implication conflicts with, amends, modifies or repeals Section 19–412 of the statutes.

Section 19–412 is as follows: "19–412. *Assignment before action—Effect on set-off, counterclaim, or defense.*—In case of the assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off, counterclaim or other cause of action or defense, whether matured or not, if matured when pleaded, existing in favor of the defendant against the assignor, before notice of the assignment; but this shall not apply to negotiable instruments transferred in good faith, and upon valuable consideration before maturity."

This statute was passed by the 1907 session of the Territorial Legislature and still remains the law unless repealed or amended by implication. This statute clearly seems to exactly fit the case before us and to entitle Cross-Defendants Turkenkoph to a complete set-off against the cross-defendants seeking judgment against Turkenkoph on their note and foreclosure of the two mortgages securing the note because the chose in action, the note sued on by Cross-Complainants Ove, was transferred and assigned to Cross-Complainant Ove by assignor Te Beest at a time when Te Beest was indebted to Turkenkoph in the total sum of $9,900.00 and at a time the note was mature and past due and before Turkenkoph had any notice of the assignment to Ove.

It is contended by counsel for appellee that said Section 19–412 was repealed by implication by the passage of the uniform Negotiable Instruments Law, particularly by Section 58 of N.I.L., which in our statutes is Section 53–158 of New Mexico Statutes 1941 Annotated. If counsel had carefully checked these two statutes, the one on set-off and the other on the Negotiable Instrument Law, he would have found they were both passed by the 1907 Legislature. The Negotiable Instrument Law is set forth in and as Chapter 83 of the 1907 Session Laws and the set-off statute is Chapter 107 of the 1907 Session Laws, being the last chapter in the volume of 1907

Session Laws of the Territory of New Mexico. Both laws were approved and became effective on the same day, March 21, 1907 which was the last day any acts of that session were approved by the Governor. These two acts were in no way contradictory, irreconcilable or repugnant to each other and there is no difficulty in giving full effect to each. If they had been contradictory, the uniform Negotiable Instrument Law being Chapter 83, and the set-off statute being Chapter 107, the last chapter in the Session Laws of 1907, there would seem to be a presumption that the Negotiable Instrument Law was passed and approved before the set-off statute and therefore the formerly passed and approved act with reference to negotiable instruments could not repeal by implication an act such as the set-off statute which was not at that time enacted. Board of County Commissioners v. Leavitt, 4 N.M. 37, 12 P. 759; Nye v. Board of County Commissioners, 36 N.M. 169, 9 P.2d 1023. But, we do not need the aid of this presumption in reaching the conclusion we do. It matters not which law was first enacted because they in no way conflict with each other, as we have already said, and both are to be given effect. Section 58 of the N.I.L., being Section 53-158 of New Mexico Statutes 1941 Annotated, reads as follows: *"Holder not in due course—Subject to original defenses—Title derived from holder in due course.*—In the hands of any holder other than a holder in due course a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

Cross-Complainants Ove urge that the first sentence of the last quoted statute limits defenses of a party sued on a note by the holder not in due course "to the same defenses as if it were nonnegotiable", and that this statute is exclusive and that the words "same defenses" mean and should be interpreted as having the same technical meaning they had in the law merchant: that they mean such equities and offenses only as inhere in the negotiable paper itself, and the holder, and those equities and defenses as attached to the note itself and not to equities or defenses arising out of different or collateral matters such as set-off and counterclaim. We agree that the words "same defenses" used in Section 58 of the N.I.L. do have this technical and restricted meaning in interpreting that section of our law. But the said section is not exclusive and does not prevent pleading other defenses of an entirely different character not dealt with or covered in such Section 58, but specifically authorized by another statute governing practice and procedure in civil actions.

The courts of other states passing upon this question hold that Section 58 of the Negotiable Instruments Law in no way affects, modifies, enlarges, restricts, amends or repeals a statute identical with or substantially like our set-off statute even where the N.I.L. is the later act passed.

The able and lengthy opinion of Judge Epes rendered in the case of Stegal v. Union Bank & Federal Trust Company, 163 Va. 417, 176 S.E. 438. 95 A.L.R. 582, constitutes the best treatise on the vital question before us we have found. It discusses the question fully and historically and shows the difference in the various types of statutes and their application. He held against the allowance of set-off in the particular case he decided because the statute of Virginia governing set-off did not allow it under the facts in that case, but he made it plain that his decision was based on a construction of the Virginia statute only, which is very different from ours. He makes it clear in his opinion that had the Virginia statute been similar to ours he would have allowed the set-off to be pleaded and applied against the assignee-holder of the note even though the debt which was the basis of the set-off was owing by the assignor and not by the assignee. See also Stegal v. Union Bank & Federal Trust Co., 163 Va. 417, 176 S.E. 438, 95 A.L.R. 607 and Harris v. Easterbrook, 55 S.D. 538, 226 N.W. 751, 70 A.L.R. 241; Annotation 70 A.L.R., pages 248 and 260;

Britton on Bills and Notes, Page 728, Sec. 153.

The Cross-Defendants Turkenkoph had valid claims in the total sum of $9,900.00 against Te Beest prior to the time Te Beest assigned the note and mortgages to Cross-Complainant Ove. Turkenkoph was entitled to plead and establish these claims by way of set-off in this case against the Cross-Complainants Ove which would more than wipe out and cancel Ove's total claim against Turkenkoph on the note. The lower court should have allowed this set-off against Cross-Complainants Ove and should have adjudged the note paid, satisfied and cancelled by set-off and the two mortgages satisfied, released, discharged and cancelled of record, and should have adjudged that Cross-Complainants take nothing and that Plaintiff and Cross-Defendants Turkenkoph recover their costs herein. The Cross-Defendants Turkenkoph are entitled to have judgment against Cross-Complainants Ove for costs in the lower court incurred in connection with the Cross-Complaint and for all costs of the appeal. The Defendant Te Beest not having been personally served with process nor having entered any appearance, the court can render no judgment affecting him, but this does not prevent the entry by the court of a judgment fully determining all matters litigated between Cross-Complainants Ove and Cross-

Defendants Turkenkoph who were before the Court.

For the reasons hereinbefore stated the judgment is reversed and the cause remanded to the District Court with instructions to set aside its judgment and to enter judgment consistent herewith in favor of Plaintiffs and Cross-Defendants Turkenkoph and against Defendants and Cross-Complainants Ove.

It is so ordered.

LUJAN, C. J., and SADLER, McGHEE, and COMPTON, JJ., concur.